**UNITED STATES of America**

v.

**Anderson J. COLEMAN, Appellant.**

**No. 86–5346.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Nov. 3, 1986.

Decided Nov. 17, 1986.

See also, D.C., 632 F.Supp. 694.

William C. Carpenter, Jr., U.S. Atty., Richard G. Andrews, Asst. U.S. Atty., Wilmington, Del., for appellee.

Victor F. Battaglia, Robert D. Goldberg, Biggs & Battaglia, Wilmington, Del., for appellant.

Before SLOVITER and STAPLETON, Circuit Judges, and GREEN, District Judge *.

* Hon. Clifford Scott Green, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

#### FACTS

This case raises, apparently for the first time, an issue concerning the scope of conduct prohibited by the Ethics in Government Act.

Appellant Anderson J. Coleman appeals from a jury verdict finding him guilty of three counts of violation of a provision of the Ethics in Government Act, 18 U.S.C. § 207(b)(i); two counts of knowingly making false declarations to the grand jury in violation of 18 U.S.C. § 1623; three counts of obstructing justice in violation of 18 U.S.C. § 1503 by lying to the grand jury and by instructing a witness not to tell the grand jury about certain transactions; and one count of illegal conversion to his own use of funds given him as payment for federal income tax in violation of 18 U.S.C. § 654. Coleman was sentenced to two years imprisonment on the perjury and obstruction of justice counts, eighteen months imprisonment on the conversion count, and probation on the other counts. All sentences were to run concurrently.

### II.

#### THE ETHICS IN GOVERNMENT ACT

Coleman was a Revenue Officer for the Internal Revenue Service for more than 23 years before he retired on January 3, 1985. During his service, Coleman attained the highest possible grade for his position, GS–12, and was, at the time of his retirement, the most experienced non-supervisory Revenue Officer working in the Dover, Delaware IRS office. Upon retirement, he established a tax and financial consulting service.

It is undisputed that within one year of his retirement Coleman attended meetings between IRS officer Gloria Dendy, to whom some of his cases had been transferred, and each of three taxpayers, Stephen Patmiou, Louis Ianire, and Philip Jackson, whose tax collection had been Coleman's personal responsibility immediately prior to his retirement. These three meetings formed the basis of the three counts alleging violation of the Ethics in Government Act.

Provisions of the Ethics in Government Act of 1978, 18 U.S.C. § 207, place certain restrictions on post-employment activity of federal officials and employees. The statute distinguishes between matters in which the former government official or employee participated "personally and substantially" and matters for which the official had "official responsibility." Section 207(a) establishes a lifetime bar against certain activities, i.e. formal or informal appearance or communications with the intent to influence, by former government officials or employees concerning matters in which the official participated personally and substantially while in office. In contrast, section 207(b) establishes only a two year ban for the conduct it covers.

Section 207(b)(ii), which is to some extent duplicative of section 207(a), applies to former top-level employees, as defined elsewhere in the statute, and penalizes one who, with respect to matters in which s/he "participated personally and substantially as an officer or employee" "knowingly represents or aids, counsels, advises, consults, or assists in representing any other person (except the United States) by personal presence at any formal or informal appearance." 18 U.S.C. § 207(b)(ii).

Coleman was not charged under either section 207(a) or 207(b)(ii). He was charged under section 207(b)(i) which makes it a crime when a federal employee, within two years after his or her employment has ceased, "knowingly acts as agent or attorney for, or otherwise represents" any other person in any formal or informal appearance before any department, agency, or court of the United States or any officer or employee thereof on any matter for which the former employee had "official

responsibility" during the year prior to leaving government employment.[1]

The district court instructed the jury that conviction of Coleman under section 207(b)(i) required the government to establish five elements: (1) that Coleman had been an IRS officer; (2) that within two years after his retirement, Coleman had "knowingly acted as agent or otherwise represented a person at an informal appearance" before an IRS officer; (3) that such representation was in connection with a proceeding or matter involving a party in which the United States had a direct and substantial interest; (4) that Coleman had had official responsibility for the matter within one year of his retirement; and (5) that Coleman's representation was knowingly done. Coleman does not argue that the district court erred in specifying the elements of the offense. Instead he argues that the district court erred as a matter of law in instructing the jury with respect to the definition of "represent."

Coleman had proffered to the district court the following definition of "represent": "To represent a person is to stand in his place; to supply his place; to act as his substitute." App. at 78. Coleman's definition was taken from the Black's Law Dictionary definition of "represent." He omitted to include in his proffered charge the remainder of that definition, i.e. "to speak or act with authority on behalf of such person." Black's Law Dictionary 1169 (5th ed. 1979).

The district court rejected Coleman's definition as unduly restrictive, App. at 388, and instructed the jury:

> To "act as agent or otherwise represent" includes appearing on behalf or in the interest of a taxpayer, either with or without the taxpayer being present, at a formal or informal meeting with the Internal Revenue Service or an officer thereof.

*Id.* at 389.

Coleman argues that this instruction is erroneous. He contends that section 207 was intended to apply only "to prevent certain federal employees from using information gained during the course of their

1. The full text of section 207(b):

Whoever, (i) having been [employed as an officer or employee of the executive branch of the United States Government] within two years after his employment has ceased, knowingly acts as agent or attorney for, or otherwise represents, any other person (except the United States), in any formal or informal appearance before, or, with the intent to influence, makes any oral or written communication on behalf of any other person (except the United States) to, or (ii) having been so employed and as specified in subsection (d) of this section, within two years after his employment has ceased, knowingly represents or aids, counsels, advises, consults, or assists in representing any other person (except the United States) by personal presence at any formal or informal appearance before—

(1) [any agency of the United States, or any officer or employee thereof,] and

(2) in connection with any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties in which the United States or the District of Columbia is a party or has a direct and substantial interest, and

(3) as to (i) which was actually pending under his official responsibility as an officer or employee within a period of one year prior to the termination of such responsibility, or, as to (ii), in which he participated personally and substantially as an officer or employee. ... shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

18 U.S.C. § 207(b). The differences between sections 207(b)(i) and 207(b)(ii) are explained by the following administrative regulations:

Section 207(b)(ii) is limited to assistance "in representing" another person by "personal presence" at an "appearance" before the United States. Different in scope from sections 207(a) and 207(b)(i), it does not apply to assistance in connection with an oral or written communication made with an intent to influence which does not involve an appearance. Nor does it bar assistance in preparation for either a formal or informal personal appearance or an appearance by written submission in a formal proceeding where the former employee is not personally present before the Government or a Government employee. The provision is designed to prevent the former Senior Employee from playing any auxiliary role during a negotiation proceeding or similar transaction with the Government so that he or she does not appear to be lending personal influence to the resolution of a matter and cannot do so in fact.

5 C.F.R. § 737.9(b).

employment to aid and assist specific persons whose cases they have worked on." Appellant's Brief at 16–17. In addition, he argues that because section 207(b)(i) forbids "representation," rather than "appearance," Congress did not intend to prohibit a former IRS from merely attending a meeting. Hence, Coleman contends, we must construe the section as prohibiting only "professional advocacy" at such meetings and not mere attendance. Coleman argues further that his presence at the three meetings before IRS officer Dendy, where he made no comment at all in one and only a brief comment and suggestion in the other two, did not constitute "professional advocacy" which could serve as a basis for a finding of representation.[2]

We need not decide if Coleman's actions constitute "professional advocacy" if the statutory term "or otherwise represents" is not limited to "professional advocacy," however defined. Nothing in either the statutory language or the legislative history suggests such a limitation.

Before its 1978 amendment, section 207(b) prevented former government employees, for a period of one year after leaving government employment, from appearing personally before a court, department or agency "as agent or attorney for, anyone other than the United States" in connection with specific matters which were within their "official responsibility" within one year before their exit from public service. 18 U.S.C. § 207(b) (West 1969). Despite the statute, Congress found that "public confidence in government has been weakened by a widespread conviction that federal officials use public office for personal gain, particularly after they leave government service." The Senate termed such action "repulsive to universally held principles of public service." S.Rep. No. 170, 95th Cong., 2d Sess. 32, *reprinted in*

1978 U.S.Code Cong. & Ad.News 4216, 4248. It noted that "[t]here is a deep public uneasiness with officials who switch sides—who become advocates and advisors to the outside interests they previously supervised as government employees." *Id.*

Congress made stringent revisions to section 207 in order "to avoid *even the appearance* of public office being used for personal or private gain." *Id.* (emphasis in original). The Senate Report makes clear that Congress not only sought to prevent former government officials from using information gained during public service, as Coleman suggests, but also sought to prevent use of "influence[ ] and access acquired during government service at public expense, for improper and unfair advantage in subsequent dealings with that department or agency." *Id.* at 32–33, 1978 U.S.Code Cong. & Ad.News at 4249. At the same time, Congress recognized the need not to impose overly stringent requirements in order to balance "the government's objective in attracting experienced and qualified persons to public service." *Id.* at 32, 1978 U.S.Code Cong. & Ad.News at 4248. The conflict of interest standards in amended section 207 must be interpreted with these congressional goals in mind.

The 1978 amendments made two significant changes in section 207 of note here. One extended the time period of the ban on post-service activity under section 207(b) from one to two years. The other extended the activity prohibited under sections 207(a), (b), and (c) [3] to encompass not only one who acts as agent or attorney but also one who "otherwise represents" a party (other than the United States), either in any formal or informal United States proceeding or, except for section 207(b)(ii), by way of any communication made with intent to influence. 18 U.S.C. § 207. The Senate

---

**2.** We note that there was evidence that Coleman was paid for his services at the meeting at which he made no comment, and that at each of the other meetings he opposed, without success, all or part of the payment plan proposed by Dendy.

**3.** Section 207(c), added in 1978, prohibits a former top-level government employee from acting as agent or attorney for, or otherwise representing, anyone other than the United States for one year after government employment in connection with *any* matter before or relating to that employee's former department or agency.

Report explained the structure and scope of section 207 as amended as follows:

> In summary, we are convinced that Title V presents a comprehensive and satisfactory policy governing post-service activities. Former officials and employees will be prohibited for life from aiding, assisting or representing anyone other than the United States on matters involving specific parties in which they had personal and substantial involvement while in office. For a period of two years following government service, former officers would also be prohibited from appearing before or communicating with any agency or court on any matter involving specific parties which was within their official responsibility during their final year in government service. Finally, for a period of one year, a former official would not be permitted to have any contact with his former agency or department on any matter then pending before the agency.

S.Rep. No. 170, 95th Cong., 2d Sess. 34, *reprinted in* 1978 U.S.Code Cong. & Ad. News 4216, 4250.

██ Nothing in the legislative history supports Coleman's argument that "otherwise represents" in section 207(b)(i) is limited to "professional advocacy." As explained by the Senate Report, "subsection (b) [referring to section (b)(i)] allows a former official to aid and assist private parties on ... matters [that were under his or her official responsibility]; provided he does not *participate* in an agency or court proceeding, or attempt to influence through written or oral communication, an agency or court on matters covered by this provision." S.Rep. No. 170, 95th Cong., 2d Sess. 48, *reprinted in* U.S.Code Cong. & Ad.News 4216, 4264 (emphasis added). The Report continues "In addition to subsequent practice by a lawyer, subsection (b) also includes *consultants* and expert witnesses, and self-representation." *Id.* (emphasis added). Thus, although section 207(b)(i) does not bar private consultation by a former official on matters that had been within his or her official responsibility, Coleman's appearance before Dendy

transformed permissible private consultation into impermissible "representation" barred by section 207(b)(i).

The Conference Committee specifically focused on the "otherwise represents" amendment which expanded the former law. In adopting the language of the House bill, the Conference Committee stated, "it is also understood that the terms, 'agent or attorney, or otherwise represents', as used in subsections (a), (b), and (c), are intended to include *appearances in any* professional capacity, *whether as* attorney, *consultant,* expert witness, or otherwise." H.Conf.Rep. No. 1756, 95th Cong., 2d Sess. 74, *reprinted in* 1978 U.S. Code Cong. & Ad.News 4381, 4390. (emphasis added). The legislative history thus effectively negates Coleman's argument.

██ The district court's interpretation of representation as including appearance "on behalf or in the interest of a taxpayer," App. at 413, "with or without speaking for the client but so that the connection of that former employee with the client is appreciated by the agency," App. at 382, comports with Congress' intent that section 207(b)(i) be applied to prevent even the appearance of impropriety.

██ Neither of the regulations referred to by Coleman supports his position that his conviction under section 207(b)(i) should be reversed. He refers us first to 5 C.F.R. § 737.1(c)(5), a regulation promulgated by the Director of the Office of Government Ethics, which provides:

> The provisions of 18 U.S.C. 207 do not, however, bar any former Government employee, regardless of rank, from employment with any private or public employer after Government service. Nor do they effectively bar employment even on a particular matter in which the former Government employee had major official involvement except in certain circumstances involving persons engaged in professional advocacy.... Instead, only certain acts which are detrimental to public confidence in the Government are prohibited.

Nothing in this regulation, which summarizes section 207 in general terms, suggests that all of the conduct prohibited under section 207 must fall within "professional advocacy." In fact, reading the regulation as a whole, it reaffirms that "certain acts which are detrimental to public confidence in the government are prohibited." Congress defined the acts detrimental to public confidence in section 207.

The second regulation Coleman refers us to provides:

> Departments and agencies have primary responsibility for the administrative enforcement of the post employment restrictions found in the Act. The Department of Justice may initiate criminal enforcement in cases involving aggravating circumstances.

5 C.F.R. § 737.1(c)(6). Coleman argues that because there were no "aggravated circumstances" justifying prosecution, the prosecution in this case was improper.

 It is clear that the administrative disciplinary remedy was added by Congress to supplement Department of Justice prosecution because, prior to the amendment, the statute had "become almost unenforceable." S.Rep. No. 170, 95th Cong., 2d Sess. 34, *reprinted in* 1978 U.S.Code Cong. & Ad.News 4216, 4250. The regulation thus cannot be read to limit the discretion of the Department of Justice to initiate criminal proceedings in cases that fall within the scope of the conduct barred by section 207. Moreover, given the seriousness of the other crimes for which Coleman was also prosecuted, and ultimately convicted, there would be a basis for finding "aggravated circumstances," even if the regulation were to be read as somehow applicable.

We therefore reject Coleman's argument that the district court erred as a matter of law in formulating the jury instruction with respect to the Ethics Act charges.[4] His conviction on those counts will be affirmed.

### III.

### *JUROR PREJUDICE*

We turn next to Coleman's contentions of trial error.

One of the government's principal witnesses was Stephen Patmiou, the owner of the Beach Drive Diner. Patmiou testified that Coleman had been collecting his taxes since 1979 or 1980. At some point Coleman told Patmiou that he could no longer accept Patmiou's checks because some had bounced and that thereafter Patmiou would have to pay cash. Patmiou testified that he made cash payments of taxes to Coleman from 1982 through 1984. These payments were not credited to Patmiou's tax account. Patmiou also testified that he gave Coleman articles of food which Coleman picked up at a diner or parking lot and for which Coleman never paid. The jury also heard tape recordings in which Coleman told Patmiou not to tell the grand jury about his cash payments to Coleman.

On the morning of the third day of trial, after Patmiou's direct examination, Patmiou met an alternate juror in the elevator, and told her, "I've got to get off at the fourth, but I've got to go back up. They're trying to crucify me." App. at 155. The juror mentioned the remark to several other jurors, and informed the court of the comment.

The district court conducted an in camera voir dire examination of each juror in the presence of counsel. The court asked each juror what, if anything, s/he had heard concerning contact between another juror and a witness, and, if so, whether what the juror had heard of the remark would in any way impair the juror's "ability to decide this case fairly and impartially on the basis

---

4. Coleman also argues that the court erred in denying his motion for acquittal on the ethics counts made after the government's presentation of its case. When Coleman presented evidence on his own behalf, he waived his challenge to the district court's denial of the motion. *See United States v. Trotter,* 529 F.2d 806, 809 n.

3 (3d Cir.1976); *United States v. Manos,* 340 F.2d 534, 536 (3d Cir.1965). Coleman never thereafter challenged the sufficiency of the evidence on the Ethics in Government Act charges, other than with respect to the jury charge discussed in the text.

of the evidence and testimony in the courtroom." Supp.App. at 8–9; App. at 159. One juror stated the remark might affect his ability to render an impartial verdict. The court excused him and also excused the alternate juror to whom Patmiou had made the comment. Coleman contends that the court should have declared a mistrial because the comment planted seeds of sympathy for Patmiou in the minds of the jurors.

It has been a generally applicable principle that any communication or contact with a juror during a trial about the matter pending is deemed presumptively prejudicial. *See Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954). The government must meet a heavy burden to establish that such contact with the juror was harmless to the defendant. *Id.* However, the district court has discretion to determine what procedures are necessary for a thorough examination of possible prejudice. *See United States v. Boscia*, 573 F.2d 827, 831 (3d Cir.), *cert. denied*, 436 U.S. 911, 98 S.Ct. 2248, 56 L.Ed.2d 411 (1978).

■ In this case, as in *Boscia*, the district court thoroughly examined each juror to determine the extent to which s/he was influenced by the communication. *See id.* at 832. Coleman relies on *Owen v. Duckworth*, 727 F.2d 643 (7th Cir.1984), but there the juror contact involved a direct threat on the life of the juror, which is clearly distinguishable from the communication here. Furthermore, Patmiou's remark to the juror was only tangentially, if at all, related to the guilt or innocence of the defendant. Any possible prejudice resulting from the sympathy, if any, elicited by the remark could be adequately removed by the extensive cross-examination of Patmiou that the court allowed Coleman to conduct.

We conclude that the district court did not abuse its discretion by denying Coleman a more extensive hearing, and hold that Coleman was not entitled to a mistrial as a matter of law.[5]

## IV.

### ADDITIONAL CONTENTIONS

Coleman makes a number of additional contentions of errors which he argues justify reversal of his convictions. We reject each contention, and summarize them briefly.

■ Coleman contends that it was error for the district court to permit recall of a prosecution witness after she had completed her testimony and had repeatedly failed to identify Coleman in her first appearance. The district court has discretion to allow the recall of a witness, even if the witness has consulted with the prosecutor in the interim. *See United States v. Rucker*, 557 F.2d 1046, 1049 (4th Cir.1977). We cannot say that the district court abused its discretion, particularly since Coleman was given full opportunity, which he used, to cross-examine the witness extensively regarding her explanation for her initial failure to identify Coleman.

■ Coleman also contends that the court erred in admitting evidence concerning certain of his other activities under Federal Rules of Evidence 404(b) and 608(b). The evidence claimed to be inadmissible under Rule 404(b) consisted of tape recorded conversations between Coleman and Patmiou after Coleman no longer was an IRS agent in which (1) Coleman told Patmiou to forget about a $500 cash loan that he had requested if it could not be kept "off the records," and (2) Patmiou transferred a case of steaks from his car to Coleman's. The court admitted the evidence after finding that the statements were probative of a "prior pattern of dealing with the tax receipts of the Beach Drive Diner," App. at 151, and that the statements' probative value outweighed

---

5. The government argues that under *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), prejudice is no longer presumed and that the defendant bears the burden of proving actual bias. In light of our disposition, we need not reach that issue.

their prejudice. *See* Federal Rule of Evidence 403.

"The standard by which we review a trial judge's decision to admit evidence of uncharged offenses [under rule 404(b)] is abuse of discretion." *United States v. O'Leary,* 739 F.2d 135, 136 (3d Cir.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 776 (1985). *See also United States v. Schwartz,* 790 F.2d 1059, 1062 (3d Cir.1986) (per curiam). We cannot conclude that admission of the evidence in this case constituted an abuse of discretion.

■ The alleged errors under Rule 608(b) consisted of the government's cross-examination of Coleman as to specific prior acts of wrongdoing. Since Coleman had put his character into issue through character witnesses who testified as to their opinion of him for honesty and reputation and for his integrity, cross-examination of him with respect to specific instances of conduct bearing on his truthfulness was permissible under Rule 608(b), subject to a probative/prejudice balancing under Rule 403. *See* Fed.R.Evid. 608(b) advisory committee's note. The district court balanced and allowed the government to cross-examine Coleman about the acts. Again, we cannot say that the district court's conclusion that the probative value of the acts in question as to truthfulness outweighed their prejudicial value was an abuse of discretion, which is the applicable standard of review. *United States v. Bocra,* 623 F.2d 281, 288 (3d Cir.), *cert. denied,* 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980).

■ Coleman also contends that two principal witnesses for the government, Patmiou and the witness who was recalled, presented perjured evidence which the government knew or should have known to be untrue. There is nothing in the record to indicate that the government knowingly elicited perjured testimony. Patmiou did incorrectly testify that he had not discussed with government inspectors what he might talk about with Coleman before the tape recorded conversations. Nothing in the record indicates, however, that the government knew that Patmiou would testify inaccurately. After Patmiou's testimony, the government called the investigator as a witness and he contradicted Patmiou on this point. Coleman has not shown that the evidence of the recalled witness contained any perjury, and thus there is nothing in the record to indicate that the government knowingly elicited perjured testimony. To the extent that Coleman is claiming that the district court erred or abused its discretion in denying the motion for judgment of acquittal or a new trial, or in determining that the witnesses were sufficiently credible to send the case to the jury, we reject those contentions.

■ Finally, we reject Coleman's contention that the district court should have excluded evidence obtained from a search of Coleman's home. Coleman alleges that the affidavit by an IRS inspector which was the basis of the search warrant was insufficient as a matter of law. We agree with the district court that the inspector's affidavit, which described the investigation of Coleman and set forth facts to support the affiant's belief that financial records relevant to Coleman's alleged crimes were present in Coleman's house, was sufficient to support the magistrate's conclusion that probable cause for a warrant existed. *See Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983). We also agree that the warrant issued was not overbroad since it listed with some specificity the types of records sought. To the extent material outside the list was seized, the district court properly determined that that material could be suppressed without requiring the suppression of all documents seized. *See United States v. Christine,* 687 F.2d 749 (3d Cir.1982) (allowing admission of properly seized evidence even though "search and seizure exceed[ed] the ambit of the underlying showing of probable cause").

## V.

### CONCLUSION

For the reasons set forth above, we will affirm the judgment of conviction on all counts.