DECISION
Before the court is appellant Thomas DiLuglio's administrative appeal of an October 3, 1985 Decision and Order of the Rhode Island Conflict of Interest Commission.[1]
Jurisdiction is pursuant to G.L. 1956 (1993 Reenactment) §42-35-15.
Facts/Travel
The appellant, an attorney, was a member of the Rhode Island State Senate from January 1975 until July 1983. Tr. 5/23/85 at 14. The Rhode Island Bottlers of Carbonated Beverages[2] (R.I. Bottlers) retained DiLuglio shortly after he left the Senate. Id.
at 16. DiLuglio agreed to represent the R.I. Bottlers in their attempt to defeat a bill relating to litter control and recycling then pending before the Rhode Island General Assembly. Tr. 4/11/85 at 16-17, 23, 69-71.
DiLuglio registered as a legislative agent on April 11, 1984. Tr. 5/23/85 at 16. He was paid approximately $5,300 for his work in opposing the bill in question. Tr. 5/23/85 at 34; People's Exhibit I. DiLuglio's efforts included the initiation of telephone conferences with and the preparation of letters of information to state senators regarding opposition to the bill. Tr. 5/23/85 at 17-19. DiLuglio attended Senate sessions during April and May of 1984. Tr. 5/23/85 at 22-23, 24; People's Exhibit III, V. He also arranged at least two dinners between state senators and representatives of the soft drink industry. Tr. 5/23/85 at 21, 22; People's Exhibit IV. These dinners, which were held at the Blue Grotto restaurant, were arranged for the purpose of providing information in opposition to the bill. Tr. 4/11/85 at 76. While DiLuglio performed these tasks, it was Attorney John Capaldi who made the formal presentations before the Senate Finance Committee. Tr. 5/23/85 at 46.
The Conflict of Interest Commission found that DiLuglio violated G.L. 1956 (1984 Reenactment) § 36-14-4(e) by representing the R.I. Bottlers before the State Senate within one year of his leaving that body. The statute read:
 "No person enumerated in § 36-14-2 or any business associate of such person unless otherwise provided by law:
 . . .
 (2) Shall after severing his official position represent himself or any other person or act as an expert witness before the state or municipal agency of which said person was a member or was employed, elected or engaged for one (1) year after he has officially severed his position; Provided, however, That this prohibition shall not pertain to a matter of public record in a court of law."[3]
The Conflict of Interest Commission concluded that DiLuglio's actions constituted "representation" before a "state or municipal agency" even though he never testified before the full State Senate. Specifically, the Commission stated:
 "In our view there are a variety of ways that one can make representations before a governmental body. A governmental body is not simply the physical location which houses the operations of that body. It is in fact comprised of individuals empowered to carry out the duties assigned to the body. Contact with state senators for the purpose of influencing their official actions on pending legislation constitutes representation before the Senate. Where one makes that contact does not change the nature of it."
Decision and Order at 4.
The Commission also noted that the purpose behind the statute was to "prevent public officials from using an `inside track' with the governmental units they serve for anything other than the public interest." Id. at 5. The Commission concluded that DiLuglio's actions violated that policy and ordered him to pay a fine of $5,000.
On October 16, 1985, DiLuglio filed an appeal seeking review of the Commission's Decision and Order under the Administrative Procedures Act, G.L. § 42-35-1 et seq. He also sought a stay of the Decision and Order pending the appeal. The stay was granted conditioned on the payment by DiLuglio of $5,000 into the Registry of the Court. By subsequent court order, that amount was increased to $10,000, which has been paid. Issues involving DiLuglio's initial failure to comply with the condition of the stay, as well as his failure to prosecute his appeal in a timely fashion, have been addressed in prior court proceedings and orders. Those matters having been resolved, the instant case is presented for review on the substantive issues raised in the appeal from the Conflict of Interest Commission's Decision and Order.
Standard of Review
The review of an administrative agency's decision by this court is controlled by R.I.G.L. § 42-35-15(g), which provides:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v.George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept.of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody v. R.I. Conflicts of Interests Commission, 509 A.2d at 458.
Review of Decision and Order
The appellant's claimed errors stem from the single issue of whether his actions constitute "representation" before a state or municipal agency.[4] DiLuglio contends that the word "represents" as used in § 36-14-4(e) (2) connotes a more formal role than that which he played. Because Capaldi was the person who made the formal presentations before the Senate Finance Committee, DiLuglio concludes that he cannot be found to have violated the statute.
Where a controversy arises concerning statutory terms, it must be resolved according to legislative intent. Little v.Conflict of Interest Comm., 121 R.I. 232, 237, 397 A.2d 884, 887 (1979). The court must establish and then effectuate that intent;Kachanis v. Board of Review, 638 A.2d 553, 557 (R.I. 1994); In reBarnacle, 623 A.2d 445, 450 (R.I. 1993); interpreting the statute in a manner that promotes the policies and obvious purposes of the enactment. Brennan v. Kirby, 529 A.2d 633, 637 (R.I. 1987). It logically follows that the court should not construe a statute in a way that results in absurdities or defeats those policies and purposes. In re Falstaff Brewing Corp., 637 A.2d 1047, 1050 (R.I. 1994). The plaintiff correctly argues that the applicable statute should be construed narrowly because it is penal in nature. The court recognizes that under the rules of statutory construction, penal statutes are subject to strict and narrow construction. State v. Smith, 662 A.2d 1171, 1175 (R.I. 1995). This standard, however, does not require the court to ignore legislative intent or disregard common sense in construing statutes. Id.
Common sense must be used to determine whether appellant should have understood that his actions constituted "representation" as prohibited by the statute. The standard employed to gauge whether a particular statutory term reasonably informs an individual that his conduct is prohibited by statute is whether the disputed verbiage provides adequate warning to a person of ordinary intelligence that his conduct is prohibited by common understanding and practice. State v. Fonseca, No. 95-59-C.A., Slip Op. at 5 (R.I., filed Feb. 8, 1996) (citations omitted). This standard is clearly met, as DiLuglio's conduct constitutes "representation" as the word is commonly understood.
Section 36-14-4 (e) (2) is a "revolving-door" statute. In Inre Advisory from the Governor, 633 A.2d 664 (R.I. 1993), the court analyzed the constitutionality of a similar statute placing restrictions on the state's reemployment of former state officials. The court stated that
 "revolving-door legislation is an effective device by which the public trust may be enhanced. There is a legitimate purpose in abridging the abuse of public office . . . The revolving-door legislation rests on a rational predicate and promotes integrity and public confidence in government."
Id. at 671. While this language affirms the validity of such restrictions, it does little to illuminate the legislative intent and purpose behind the specific statute at issue in the instant case. To accomplish that task, the court may look to similar statutes in other states or a federal cognate, if one exists. SeeIn re Advisory Opinion to the Governor, 504 A.2d 456, 467 (R.I. 1986) ("legislation in other states pertaining to the same subject matter is a helpful source of interpretive guidance");cf. Cabral v. Arruda, 556 A.2d 47, 49 (R.I. 1989) (Rhode Island courts may look to federal court decisions for assistance in interpreting corresponding rules of civil procedure).
The federal government and numerous states have revolving-door statutes. See 18 U.S.C. § 207 (setting forth federal revolving-door statute); Hochman, Post-EmploymentLobbying Restrictions on the Legislative Branch of Government: AMinimalist Approach to Regulating Ethics in Government, 65 Wn. L. Rev. 883, 890 (1990) (collecting state statutes). In construing one such statute, the New York Court of Appeals stated that
 "the purpose of `revolving door' provisions such as those at issue here is to prevent former government employees from unfairly profiting from or otherwise trading upon the contacts, associations and special knowledge that they acquired during their tenure at public servants . . . The underlying premise is that former officers should not be permitted to exercise undue influence over former colleagues, still in office, in matters pending before the agencies . . ."
Forti v. New York State Ethics Comm., 555 N.Y.S.2d 235, 237-38 (Ct. App. 1990). Similarly, it has been noted that "[m]any lobbyists are former legislators or former administrative officials. Their position gives them an unusual advantage because of their knowledge of legislative practice, and because of their personal relationships." 1 Singer, Sutherland StatutoryConstruction, § 13.08 at 672 (5th ed. 1994).
Also providing guidance is United States v. Coleman, 805 F.2d 474
(3rd. Cir. 1986), a case discussing the proper interpretation of "representation" in the revolving-door context. The defendant in Coleman, a former Internal Revenue Service employee turned private consultant, was alleged to have violated 18 U.S.C. § 207
by attending meetings between the IRS officer who took over his case load and three taxpayers that Coleman subsequently represented. Id. at 477. Coleman claimed that this action did not constitute "representation" within the meaning of § 207, arguing that the statute "prohibited only `professional advocacy' at such meetings and not mere attendance." Id. at 479. The court declined to adopt Coleman's reading of the statute, finding that the legislative history and expressed policies surrounding the statute's passage supported a finding that the defendant's conduct was proscribed by the statute. Id. at 480.[5]
The purpose of § 36-14-4 (e) (2) was to prevent former government employees from improperly utilizing the benefits of their past work experience. This purpose is not effectuated by perceiving a distinction between testifying or appearing before the General Assembly and working on another's behalf behind the scenes. Both forms of conduct allow former legislators to unfairly exercise influence over their former colleagues. Adoption of the appellant's suggested view of 36-14-4 (e) (2) contravenes this purpose and thwarts the legislative intent of the statute. Moreover, the appellant's position serves to recognize an illogical distinction between two forms of conduct that create the same risk of such influence.
Finally, the court recognizes that the Conflicts of Interest Commission was the administrative agency entrusted with the administration and enforcement of the statute in question. That agency concluded that DiLuglio's actions fell within the parameters of conduct prohibited by the statute. The Commission's interpretation of that statute is entitled to deference. SeePawtucket Power Associates, L.P. v. City of Pawtucket,622 A.2d 452, 456 (R.I. 1993) ("deference will be accorded to an administrative agency when it interprets a statute whose administration and enforcement has been entrusted to the agency"); Gryguc v. Bendick, 510 A.2d 937, 939 (R.I. 1986) ("although not controlling, the interpretation given a statute by an administrative agency will be given great weight").
Accordingly, the court declines to accept the appellant's view of the § 36-14-4 (e) (2). Upon review of the entire record, the court finds that the Conflict of Interest Commission's Decision and Order of October 3, 1985 is supported by substantial evidence and is not affected by error of law. As material rights of the appellant have not been substantially prejudiced, the Commission's order is affirmed.
Counsel shall prepare the appropriate order for entry.
[1] In response to a constitutional directive, the Legislature terminated the existence of the Conflict of Interest Commission in 1987, and established the Rhode Island Ethics Commission in its place. In re Advisory Opinion, 612 A.2d 1, 3-4 (R.I. 1992). While the Ethics Commission was eventually substituted as appellee in this matter, the Conflict of Interest Commission is referred by name where it was responsible for the action in question.
[2] This organization was also known as the Rhode Island Soft Drink Association. Tr. 4/11/85 at 66.
[3] This section was later amended. Because "[t]he behavior that led to the filing of the complaint occurred" prior to the revision, the court's decision is governed by the statute as it then existed. DiPrete v. Morsilli, 635 A.2d 1155, 158 n. 1 (R.I. 1994).
[4] The appellant has advanced two separate claims of error. Initially, he claimed that he did not represent a party before a "state or municipal agency" but rather had contact only with the individuals that comprise the General Assembly. The appellant's second argument is similar in nature, contending that the Commission's decision is not based on substantial evidence because no evidence was introduced showing that DiLuglio ever contacted a member of the Senate to express a position on the bill in question. Each of these claims is resolved in the court's analysis.
[5] The fact that § 207 was a penal statute did not alter theColeman court's analysis.