# "Communications" Under 18 U.S.C. § 207

A former high-ranking government official proposed establishing a consulting firm—as a sole proprietorship, a partnership, or a corporation—in which he would be one of a very few employees, or perhaps even the sole employee. If, as hypothesized, the consulting firm prepares a report on behalf of certain clients, which is submitted directly to his former agency by the consulting firm or, with the former official's knowledge, by his client with the report bearing the consulting firm's name, and it is expected by the former official that his identity as the author of the report may be commonly known throughout the industry and at his former agency, he would be making a communication prohibited by 18 U.S.C. § 207(c).

January 19, 2001

MEMORANDUM OPINION FOR THE DIRECTOR
OFFICE OF GOVERNMENT ETHICS

The Office of Government Ethics ("OGE") has asked for our opinion about the application of 18 U.S.C. § 207(c) to the activities of a former high-level official at a federal agency. Section 207(c) provides criminal penalties for a "senior [official] of the executive branch and independent agencies"[1] who:

> within 1 year after the termination of his or her service or employment as such officer or employee, *knowingly makes, with the intent to influence, any communication to or appearance before any officer or employee of the department or agency* in which such person served within 1 year before such termination, on behalf of any other person (except the United States), in connection with any matter on which such person seeks official action by any officer or employee of such department or agency. . . .

18 U.S.C. § 207(c)(1) (1994) (emphasis added).

At the time of its request,[2] OGE anticipated that a former official would establish a consulting firm—as a sole proprietorship, a partnership, or a corporation—in which he would be one of a very few employees, or perhaps even the sole employee. OGE's request anticipated that the consulting firm would prepare a report on behalf of certain clients and that the report would be submitted to the former official's agency in one of two possible ways. First, the consulting firm might submit the report directly to the agency and would indicate, on the report itself, that the firm had prepared it. Alternatively, the firm's clients might, with the former official's knowledge, submit the report bearing the consulting firm's name

---

[1] *See* 18 U.S.C. § 207(c)(2) (1994 & Supp. IV 1998) (identifying personnel within this category).

[2] *See* Letter for Richard L. Shiffrin, Deputy Assistant Attorney General, Office of Legal Counsel, from Stephen D. Potts, Director, Office of Government Ethics (Oct. 4, 1996) ("Potts Letter").

to the agency. OGE indicated that the individual "expects" that "his identity as the author of the report may be commonly known throughout the industry and at [his former agency]," and has asked whether, in light of these facts, the former official "would be making a prohibited 'communication' to or 'appearance' before his former agency." Potts Letter at 3. Accepting OGE's assumption that all other elements of the offense would be satisfied, *see id*. at 4 & n.3, we conclude that the former official could properly be found liable under section 207(c) based on the facts OGE has presented.

## I.

Although section 207(c)(1) bans "communication[s]" and "appearance[s]," the statute does not define these terms. Regulations interpreting section 207 state that "[a]n appearance occurs when a former employee . . . submits a brief in an agency administrative proceeding in his own name," and they further explain that "[a] communication is broader than an appearance and includes for example, correspondence, or telephone calls." 5 C.F.R. § 2637.201(b)(3) (2000) (Example 1).[3] Therefore, even if, as the regulations state, a former official who submits a brief bearing only his firm's name has not made a formal "appearance" in a proceeding, he may still have made a "communication."[4]

---

[3] As OGE notes in its letter, 5 C.F.R. part 2637 contains regulations written with respect to § 207 as it existed prior to its amendment in 1989, but OGE has continued to rely on these regulations when interpreting those portions of the 1989 amendments that made no substantive change to the statute. *See* Potts Letter at 4 n.2. We believe such reliance is appropriate here because the 1989 amendments did not make a change in any aspect of section 207(c) with which we are concerned. Rather, Congress amended section 207 to respond to the decision of the District of Columbia Circuit in *United States v. Nofziger*, 878 F.2d 442 (D.C. Cir. 1989). The *Nofziger* court held that section 207(c) requires that a defendant have knowledge of each element of his offense, *see* 878 F.2d at 454, including that his appearance before or communication with an agency relate to a "particular matter . . . which is pending before such . . . agency or in which such . . . agency has a direct and substantial interest." Beth Frensilli, *Statutory Interpretation of Ambiguous Criminal Statutes: An Analysis of Title 18, Section 207(c) of the United States Code*, 58 Geo. Wash. L. Rev. 972, 992 (1990) ("Frensilli") (quoting 18 U.S.C. § 207(c) (1988) (amended 1989)). Congress responded by eliminating the requirement that a matter be "pending" or of "direct and substantial interest" to an agency and by broadening the prohibition to cover "any matter on which such person seeks official action." 18 U.S.C. § 207(c). In addition, section 207(c) previously prohibited "any oral or written communication," and barred certain "appearances" in a separate clause. The majority and dissenting opinions in *Nofziger* disputed whether this language created separate offenses with different *mens rea* requirements. Congress changed the language of section 207(c), which now bars "any communication to or appearance before" the agency, to clarify that the *mens rea* requirement is the same regardless of whether a person makes a "communication" or "appearance." *See* Frensilli, 58 Geo. Wash. L. Rev. at 991.

[4] We thus agree with OGE that this example in the regulations implies that, if a former official submits a brief that does not use his own name, he has not made an "appearance." *See* Potts Letter at 4. We also agree that "absent physical presence before an agency employee, the distinction between a communication and an appearance is not entirely clear." *Id*. at 3. For purposes of this opinion, we focus on the broader term "communication," and thus find it unnecessary to attempt to unravel the distinction between an "appearance" and a "communication."

Standing alone, the term "communication" is quite broad. It includes "the act or action of imparting or transmitting," "facts or information communicated," and any "instance of written information." *Webster's Third New International Dictionary* 460 (1993). At its broadest, therefore, section 207(c) could be read to prohibit a former official from imparting any information to agency officials, whether or not that information is attributable to the former official. There is at least some support in the legislative history for such a sweeping prohibition. Congress intended to prevent former officials from using "*information*"—as well as influence and access—"acquired during government service at public expense, for improper and unfair advantage in subsequent dealings with th[eir] department or agency." S. Rep. No. 95-170, at 33 (1977), *reprinted in* 1978 U.S.C.C.A.N. 4216, 4249. The "one-year 'cooling-off' period" that section 207(c) prescribes, moreover, may be designed, at least in part, to ensure that former officials are not able to trade on current "inside" information concerning non-public policies, theories or ideas that their former agencies are actively considering.

We think it clear, however, that section 207(c) does not reach all situations in which a former official is involved in conveying information to agency officials. The language of section 207(c)—which bans "any communication . . . or appearance"—is narrower than that of other subsections of the Ethics in Government Act. *See Crandon v. United States*, 494 U.S. 152, 166-67 (1990) (looking to the statute as a whole in interpreting section 209). Notably, sections 207(b)(1) and 207(f)(1) not only prohibit former officials from communicating or appearing on behalf of persons or entities with respect to matters in which the former officials "personally and substantially participated" during their government service, these provisions also prohibit former officials from "*aid[ing] or advis[ing]*" persons or entities on such matters. 18 U.S.C. § 207(b)(1), (f)(1)(B) (1994) (emphasis added). The prohibition on "aid[ing]," "advis[ing]" and "communicat[ing]" in these provisions demonstrates that section 207(c)'s prohibition on "communication" alone does not reach behind-the-scenes work on matters that are before a former official's department or agency. *See, e.g.*, *Russello v. United States*, 464 U.S. 16, 23 (1983) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)). This understanding of the provision is confirmed by the statute's legislative history, and has been adopted in regulations and administrative interpretations of the provision. *See* S. Rep. No. 95-170, at 49, *reprinted in* 1978 U.S.C.C.A.N. at 4265 ("The former official is free to aid and assist and consult on matters covered by subsection (c), as long as there is no contact by the former official with his former agency."); 5 C.F.R. § 2637.204(f) (Example 4) (A former official may "consult and assist in the preparation of briefs to be filed with the Administration" but "should not sign briefs or other communications or take any other action that

might constitute an appearance."); Office of Government Ethics, *Applicability of 18 U.S.C. § 207(c) to Detailee from State University*, Informal Advisory Op. 96x14, at 4 (Aug. 2, 1996), *available at* http://www.oge.gov/OGE-Advisories/Legal-Advisories/Legal-Advisories/ (last visited May 24, 2012) ("Section 207(c) has long been interpreted to permit so-called 'behind-the-scenes' assistance."); Letter for Whitney North Seymour, Office of Independent Counsel, from Charles J. Cooper, Assistant Attorney General, Office Legal Counsel at 6 (Apr. 29, 1987) (section 207(c) bars former officials from signing briefs but not from "aiding and assisting in a 'behind the scenes' fashion").

Although, as OGE notes, section 207(c) does not expressly require that a former official "be identified as the source of a post-employment communication," Potts Letter at 6, we believe an element of attribution is implicit in the distinction the statute and regulations draw between permissible behind-the-scenes advice and assistance, on the one hand, and impermissible telephone calls, signed pleadings and direct contact, on the other hand. In light of this distinction, we conclude that a "communication" is the act of imparting or transmitting information with the intent that the information be attributed to the former official. This construction, we believe, is confirmed by section 207(c)(1)'s requirement that a "communication" be made "with the intent to influence" a department or agency, and is consistent with Congress's desire to prevent the use of "influence[] and access acquired during government service at public expense, for improper and unfair advantage in dealings with [a] department or agency." S. Rep. No. 95-170, at 33, *reprinted in* 1978 U.S.C.C.A.N. at 4249. In order to use influence gained while a high-ranking government official, a former official must intend that information or views conveyed to her former agency be attributed to her.[5]

As the regulations and interpretive guidance make clear, a former official who submits a signed pleading, meets in person with agency officials, or calls those officials directly necessarily intends to be identified as the source of the information she conveys. *Cf. Applicability of 18 U.S.C. § 207(c) to the Briefing and Arguing of Cases in Which the Department of Justice Represents a Party*, 17 Op. O.L.C. 37, 43 (1993) ("Koffsky Memorandum") (a finding of intent to influence is "unavoidable" where an attorney files briefs or makes an oral argument) (internal quotations and citation omitted). But these are not the only forms of communication that the statute proscribes. A high-ranking official who aggressively publiciz-

---

[5] We do not believe that the attribution element implicit in the term "communication" requires that the recipient of the information "actually recognize" the former official as the source of that information. Potts Letter at 7. Just as a former official who intends to influence his former agency need not actually succeed in that endeavor in order to violate section 207(c), so too one who intends to be identified as the source of information need not succeed in being so identified. We note, however, that, as a practical matter, an agency employee's identification of the former official as the source of a submission would likely form a very significant part of the circumstantial evidence demonstrating that the former official intended to be identified.

es the fact that he is leaving an agency to start a one-man consulting firm, then submits a report to the agency shortly thereafter under the name of that firm, almost certainly intends that the report will be attributed to him. Similarly, a former official who is not introduced by name, but participates on a conference call with his former agency colleagues, almost certainly intends that his colleagues will recognize his voice. We see no meaningful distinction between these two situations and the submission of a signed pleading. The conduct in all three cases implicates the core concerns underlying the statute because it enables the former official to use influence acquired during government service for improper and unfair advantage, and creates the appearance that the agency's decision might be affected by the use of the former official's prior government position. *Cf. United States v. Coleman*, 805 F.2d 474, 480 (3d Cir. 1986) (upholding the district court's construction of the term "representation" in section 207(b)(i) as including an appearance on behalf of a client "with or without speaking for the client but so that the connection of th[e] former employee with the client is appreciated by the agency") (internal quotations and citations omitted).

We recognize that our construction of the term "communication" does not provide former officials with bright line rules to guide their conduct during the one year "cooling off" period. Instead, whether a former official could be found criminally liable for conduct that falls outside the safe harbor of behind-the-scenes assistance, but falls short of direct and open contact with agency personnel, will vary depending upon the facts and the strength of the circumstantial evidence that the former official intended to be identified as the source of any information or views conveyed to the agency. As the examples above demonstrate, however, any attempt to draw bright line rules would inevitably create artificial distinctions between equally pernicious types of conduct.

We also recognize that, in the absence of bright-line rules, the threat of criminal penalties may induce former officials to refrain from submitting information in a certain form or manner even where the submission might not actually violate section 207(c). For example, a very small firm with a former agency official might refrain from submitting a report in the firm's name even where the official had no role in preparing the report, because the former official might fear that the submission would be viewed as evidence that she intended to be identified as the author of the report. We do not believe, however, that this possibility militates against our construction of the statute. In light of the safe harbor provided by the "behind-the-scenes" assistance rule, former officials can sell their expertise to interested clients, and their clients can present all substantive information or views they wish to federal agencies. An attribution standard, therefore, will not "chill" any substantive speech.[6] Instead, as the example we have identified indicates, such

---

[6] The fact that a report conveys a particular view that a former official is "well-known" for espousing could not, in our view, be used as evidence that the former official intended to be identified as the

a standard may, at worst, discourage certain forms of presenting information because former officials might be concerned that a particular form or manner of presentation would mistakenly suggest to agency officials that a former high-ranking official is affiliated with a particular submission. This consequence of an attribution standard, however, is a permissible by-product of a statute designed to protect both the integrity of, and public confidence in, government decisionmaking. *See* S. Rep. No. 95-170, at 32, *reprinted in* 1978 U.S.C.C.A.N. at 4248 ("public confidence in government has been weakened by a widespread conviction that federal officials use public office for personal gain, particularly after they leave government service").[7]

## II.

Applying this construction of the term "communication" to the facts set forth in OGE's letter, we believe the former official could properly be found liable for violating section 207(c) under the circumstances OGE describes. To be sure, OGE's letter does not set forth direct evidence that the former official in question intends to be identified as the author of the report he will prepare. But direct evidence of such an intent, such as an admission, is not essential. *See* W. LaFave & A. Scott, *Criminal Law* 226 (2d ed. 1986) (intent "must be gathered from [a defendant's] words (if any) and actions in light of all the surrounding circumstances"). OGE states, for example, that the former official will submit the report under the name of his small consulting company "knowing that . . . [he] will very possibly be recognized as the report's author." Potts Letter at 1. Elsewhere, OGE indicates that a cover letter prepared by the former official's client "might

---

source of the report. Potts Letter at 7 n.9. Such a rule would effectively nullify the advice-and-assistance safe harbor, because former officials would never know whether, despite their efforts to work entirely behind the scenes, they might be identified as the source of a particular view. In addition, because many people can hold a particular view, presentation of that view is not uniquely identifying in the same way that a signature is or a company name can be.

[7] It is conceivable that the form or manner of presenting substantive views may have some communicative value. In our example of the small firm with the former agency official who had no involvement in preparing a particular report, it may be that the client would wish to identify the firm because the firm's outstanding reputation will give the report greater persuasive force. The government's "undeniably powerful" interest in ensuring "that federal officers not misuse or appear to misuse power," *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 472 (1995), however, is more than sufficient to justify any chilling effect that an attribution standard might have on such speech. *See Hill v. Colorado*, 530 U.S. 703, 729 (2000) (prophylactic statute properly prohibited all unwelcome demonstrators from approaching closer than eight feet to abortion clinic patient even though, "by doing so, it will sometimes inhibit a demonstrator whose approach in fact would have proved harmless"); *FEC v. Nat'l Right to Work Comm.*, 459 U.S. 197, 210 (1982) ("The governmental interest in preventing both actual corruption and the appearance of corruption" are sufficient to sustain prophylactic measures that trench on First Amendment rights.); *cf. Nat'l Treasury Employees Union*, 513 U.S. at 473 (striking down restriction on First Amendment rights that applied to "an immense class of [federal] workers with negligible power to confer favors").

expressly state [that the former official's] company was the source of the paper," and that, in light of this identification, the former official "expects that, although not explicitly mentioned in either his papers or documents submitting them to [his former agency], his identity as the author may be commonly known throughout the industry and at [his former agency]." *Id*. at 3 (internal quotation marks and citations omitted). Given these facts, a decision by the former official to submit the report in the name of his company would create a very strong inference that he intends the report to be attributed to him.

The factual variables OGE identifies in its letter do not alter our conclusion. OGE notes, for example, that the former official might establish a firm in which he is the only principal or partner, or, alternatively, that his firm might include a handful of principals. If the former official is the sole principal, the inference that he intends a report submitted in the name of that firm to be attributed to him is particularly compelling. OGE's letter indicates, however, that even if he is not the sole principal, the former official still "expects that . . . his identity as the author may be commonly known throughout the industry and at [his former agency]." *Id*. at 3 (internal quotation marks and citations omitted). Accordingly, modest changes in the structure and composition of the consulting company itself would not preclude a finding of criminal liability.[8] Similarly, we do not think he could avoid criminal liability by knowingly permitting his client to submit a report under the name of his firm, rather than submitting the report himself in the name of his firm. OGE's letter suggests that the former official would expect agency officials to recognize him as the author of such a report in either case. *See id*.

As the foregoing discussion makes clear, the determination of whether a former official has knowingly made a communication will depend on the facts of each case. Therefore, we invite OGE to consult with us on future cases as they may arise.

JOSEPH R. GUERRA
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[8] We have no occasion to address here the difficult questions that may arise where a former official joins, or establishes, a large firm. As we explained in a 1993 opinion, a former official does not necessarily violate section 207(c) when his firm sends a report to his former agency printed on law firm letterhead that includes his name, because the submission would not be "from a specific attorney." Koffsky Memorandum, 17 Op. O.L.C. at 43 n.6. Because a violation of section 207(c) will typically turn on a fact-intensive inquiry, the size of the former official's firm is but one of many relevant factors that may affect the strength of any inference that the former official intended to be identified as the author of a particular report or submission.