STATE

v.

Matthew J. SMITH.

No. 94–654–C.A.

Supreme Court of Rhode Island.

July 24, 1995.

Jeffrey B. Pine, Atty. Gen., Thomas Dickinson, Aaron L. Weisman, Asst. Attys. Gen., Providence, for plaintiff.

John D. Lynch, Robert H. Friel, Lynch, Costello & Friel, Providence, for defendant.

## OPINION

SHEA, Justice.

This matter is before the court on two separate appeals. The defendant, Matthew J. Smith, appeals from Superior Court judgments of conviction of filing a false document in violation of G.L.1956 (1981 Reenactment) § 11–18–1, and conspiracy in filing a false document in violation of G.L.1956 (1981 Reenactment) § 11–1–6. The state appeals the trial justice's pretrial dismissal of a criminal-conversion charge against the defendant.

For the following reasons we deny and dismiss both appeals.

The facts and procedural history pertinent to this appeal are as follows. On December 14, 1993, Matthew J. Smith, former court administrator and clerk of the Rhode Island Supreme Court, was indicted by a statewide grand jury on one count of wrongful conversion by a public employee in violation of G.L.1956 (1981 Reenactment) § 11–41–27, as amended by P.L.1991, ch. 153, § 1, two counts of filing a false document in violation of § 11–18–1, one count of obtaining money under false pretenses in violation of § 11–41–4 and § 11–41–5, as amended by P.L.1991, ch. 38, § 1, and two counts of conspiracy in violation of § 11–1–6.

The defendant subsequently filed a motion to dismiss the felony charge of wrongful conversion. From July 5 through July 8, 1994, a pretrial hearing was held in Superior Court. The focus of the hearing concerned count 2 of the indictment that charged defendant with wrongfully converting the labor or services of a court employee to his own private use.

The trial justice granted defendant's motion to dismiss count 2 of the indictment on two grounds. First, she found prosecutorial error in the grand jury proceedings. She also found that the facts as alleged by the state did not constitute criminal conversion as encompassed in § 11–41–27. The state appealed the pretrial dismissal to this court pursuant to G.L.1956 (1985 Reenactment) § 9–24–32.

The case went to trial on the remaining charges. After both parties had rested the trial justice granted defendant's Super R.Crim.P.Rule 29 motion for judgment of acquittal of the false-pretenses count, one of the conspiracy counts, and one of the filing-false-documents counts. On the two remaining counts submitted to the jury, the misdemeanor charges of filing a false document and conspiracy in filing the document, defendant was found guilty. The defendant filed a motion for a new trial that was denied. The trial justice imposed a $500 fine on each count, and defendant appealed the judgments of conviction to this court.

## I
### State's Appeal of Pretrial Dismissal of Count 2

The factual background leading to defendant's being indicted on charges of criminal conversion of the services of a state employee are as follows. During grand jury proceedings on October 26, 1993, a Supreme Court employee testified that in addition to her duties as a court employee, she was employed part time for Lincoln Center Partnership (Lincoln Center), a corporate entity whose stock was owned by defendant, the former chief justice, and others. The court employee testified that in the early part of 1993 she had fallen behind in her work for Lincoln Center. She requested that defendant give her a day off from her court duties so that she might catch up on her work. She testified that she was given administrative leave and paid by the state for the work that she did for Lincoln Center.

■ The first issue presented is whether the trial justice erred by dismissing count 2 of the indictment on the basis of her conclusion that the prosecutor had erred in certain aspects of his legal instructions to the grand jury. In particular, the prosecutor had instructed the grand jury on the crime of conversion, advising the jurors as follows:

"The State is asking you to consider under the same theory, that is, the expenditures of money and the wrongful conversion of money through what has been described to you as the Rhode Island Supreme Court Special Account, Matthew Smith should be charged with wrongful conversion by a public employee in an amount over one hundred dollars."

The defendant contends that the prosecutor's instructions to the grand jury deprived him of his right to an independent and informed grand jury and left grave doubt about whether the proceedings were fundamentally fair. The defendant's contention is based upon the fact that the trial justice found neither evidence that the funds had come from the special account nor any instruction by the prosecutor that the conversion alleged was conversion of the value of an employee's services. Therefore, defendant

asserts, the trial justice was correct in dismissing count 2 of the indictment on the ground that materially erroneous and misleading legal instructions were given to the grand jury.

■ Dismissal of an indictment based upon prosecutorial misconduct before the grand jury is a drastic remedy reserved for very limited and extreme circumstances. *See, e.g., State v. Mollicone,* 654 A.2d 311, 326 (R.I.1995); *State v. Mainelli,* 543 A.2d 1311, 1313 (R.I.1988); *State v. Wilshire,* 509 A.2d 444, 448 (R.I.1986). "[A]n indictment returned by a legally constituted grand jury calls for a trial on the merits." *Mainelli,* 543 A.2d at 1313 (citing *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408–09, 100 L.Ed. 397, 402–03 (1956)).

The prosecution's instruction to the grand jury was clearly incorrect because there was unequivocal evidence that the money for the court employee's services came from state funds, not the Supreme Court special account. In particular, the assistant administrator for human resources of the Rhode Island Supreme Court testified that the source of the employee's pay for work done for Lincoln Center was state funds, not the Supreme Court special account. The state submits that dismissal of the indictment is especially inappropriate here, where the alleged prosecutorial error is utterly irrelevant to the grand jury's consideration of the evidence. We agree.

It will be recalled that during the time of this grand jury proceeding there was a media frenzy surrounding the Rhode Island Supreme Court and the existence and use of a so-called Supreme Court secret account. The saturation of the media regarding the "secret" account may have caused the deputy attorney general who was presenting the case to the grand jury to misspeak as he did. Notwithstanding this error in the grand jury presentation, the questioning during the grand jury proceedings identified the true origin of the moneys paid to the state employee for nonstate work.

■ We have stated that absent "flagrant and overbearing" misconduct by a prosecutor, the proper remedy for alleged grand jury error is a trial on the merits. *State v. Chiellini,* 557 A.2d 1195, 1199 (R.I.1989). Therefore, we agree with the state that the trial justice's dismissal of count 2 of the indictment on the ground of prosecutorial misconduct was not justified.

The trial justice also found, however, that § 11–41–27 did not apply to a supervisory state employee who wrongfully compensates a subordinate from state funds for the performance of personal services for the supervisor's outside interests. The trial justice reasoned that the services of a state employee are intangible interests not covered by the conversion statute.

Section 11–41–27 reads as follows:

"Wrongful conversion by officer or state or municipal employee.—Whoever, being an officer or employee of the State of Rhode Island, or any department or agency or instrumentality or political subdivision thereof or any city or town, embezzles or wrongfully converts to his or her own use or benefit, or to the use or benefit of any other, any money *or property* which comes into his or her possession or control in the execution of such office or employment, shall be fined not more than fifty thousand dollars ($50,000) or three (3) times the value of the money or property thus embezzled or converted, whichever is greater, or imprisoned not more than twenty (20) years, or both; except that if the sum or value of the property embezzled is less than one hundred dollars ($100) he or she shall be fined not more than one thousand dollars ($1,000) or imprisoned not more than one year, or both." (Emphasis added.)

The state asserts that the trial justice's narrow reading of the statute in question is inconsistent both with the statute's plain meaning and with the broad interpretation of property adopted by this court and other courts. The state contends that intangible interests, such as the value of a subordinate employee's services, are nevertheless property and are entitled to protection as such. The state cites *Colonial Laundries, Inc. v. Henry,* 48 R.I. 332, 138 A. 47 (1927), a civil case, to show that this court has recognized that customer lists are entitled to protection

**1175**

as the property of its true owner. The state strenuously argues that an interest, to be regarded as property, "need not be one that was considered property at common law and, of course, need not be tangible." *G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service, Inc.*, 958 F.2d 896, 902 (9th Cir.1992) (citing *City of Oakland v. Oakland Raiders*, 32 Cal.3d 60, 183 Cal.Rptr. 673, 646 P.2d 835 (1982)). In addition the state cites United States Supreme Court precedent for the proposition that property "extends beyond land and tangible goods and includes the products of an individual's 'labor and invention.'" *See Ruckelshaus v. Monsanto*, 467 U.S. 986, 1003, 104 S.Ct. 2862, 2873, 81 L.Ed.2d 815, 832 (1984).

We acknowledge that the definition of "property" has expanded to include various forms of intangibles. However, under the rules of statutory construction, a penal statute is subject to strict and narrow construction. *State v. Powers*, 644 A.2d 828, 830 (R.I.1994); *State v. Dussault*, 121 R.I. 751, 753, 403 A.2d 244, 246 (1979). In addition, the words of a statute are accorded "their literal and plain meaning" unless the words are ambiguous. *Powers*, 644 A.2d at 830; *State v. Oliveira*, 432 A.2d 664, 666 (R.I. 1981).

The state argues that "there is no canon against using common sense in construing laws as saying what they obviously mean." *Roschen v. Ward*, 279 U.S. 337, 339, 49 S.Ct. 336, 336, 73 L.Ed. 722, 728 (1929). We agree, but "this court has the responsibility of effectuating the intent of the Legislature by examining a statute in its entirety and giving the words their plain and ordinary meaning." *In re Falstaff Brewing Corp. Re: Narragansett Brewery Fire*, 637 A.2d 1047, 1049 (R.I.1994). When the Rhode Island Legislature has considered it appropriate to extend the scope of the general larceny statute, it has done so by explicit legislative enactments. The Legislature has extended the scope of the general larceny statute to proscribe the theft not only of goods or chattel but also of money, notes, bank bills, bank certificates, stock certificates, orders, bills of exchange, bills of lading, railroad tickets, bonds, warrants, obligations, bills, promissory notes, records of a public officer, writs, legal process, adjustments, receipts, deeds, indentures of apprenticeships, covenants, indentures, and assurances. Section 11–41–1. Additionally, the Legislature has enacted other statutes specifically criminalizing the theft of other than goods and chattels: §§ 11–41–8 (animals), 11–41–9 (poultry), G.L. 1956 (1981 Reenactment) § 11–52–2, as amended by P.L.1989, ch. 136, § 1 (computer information); § 11–35–16, as amended by P.L.1983, ch. 316, § 1 (telephone services); and § 11–35–25, as amended by P.L.1983, ch. 316, § 1 (cable-television services). When the Legislature has deemed it appropriate to criminalize theft in any form of an intangible, the Legislature has done so by explicit language. Thus far, the Rhode Island Legislature has not acted to proscribe the theft of an employee's services as a felony.

Legislatures throughout the country have acted to criminalize the theft of an employee's services. *See, e.g.*, Ala.Code § 13A–8–10 (1994); Ariz.Rev.Stat.Ann. § 13–1802(A)(6) (West 1989); Conn.Gen.Stat.Ann. § 53a–119(7) (West 1994); Me.Rev.Stat.Ann. tit. 17A, § 357 (West 1983); N.Y.Penal Law § 165.15 (McKinney 1988). In fact the commentator to McKinney's Consolidated Laws of New York has explained the reason the New York Legislature enacted a specific theft-of-services statute:

> "Since a 'service' [defined in § 155.00(8)] is generally not considered property, and a theft of a service would not therefore constitute larceny, this statute was devised to proscribe such thefts." N.Y.Penal Law § 165.15, Commentary at 241.

Courts in all but one jurisdiction that have considered the issue have refused to expand a larceny or an embezzlement statute to encompass theft of services. *E.g., Chappell v. United States*, 270 F.2d 274 (9th Cir.1959) (services not "thing of value" under 18 U.S.C. § 641); *People v. Davis*, 203 Ill.App.3d 838, 148 Ill.Dec. 859, 561 N.E.2d 165 (1990) (anticipated labor not "property"); *Lund v. Virginia*, 217 Va. 688, 232 S.E.2d 745 (1977) (labor, services, and unauthorized use of computers not subject to larceny); *but see State v. Brown*, 791 S.W.2d 31 (Tenn.Cr.App.1990) (holding services of a public employee as

property under embezzlement statute). With the exception of *Brown,* courts have refused to extend theft statutes to include an employee's service because it "must be addressed, if at all, by the legislature." *Davis,* 203 Ill.App.3d at 847, 148 Ill.Dec. at 864, 561 N.E.2d at 170.

It is undeniable that defendant's acts in utilizing court personnel for private business on state time would be considered by most people an example of arrogant behavior and an abuse of the public trust. It is clear, however, that these actions are not felonies under the criminal-conversion statute as it reads at this time. We understand the frustration of the state in this controversy; however, we shall not engage in judicial legislation to reach a particular result. Therefore, we conclude that the trial justice was correct in dismissing count 2 of the indictment because § 11–41–27 does not apply to the theft of services of an employee.

## II

### Defendant's Appeal of Judgments of Conviction of Filing a False Document and Conspiracy in Filing a False Document

The factual background leading to defendant's convictions for filing a false document and conspiracy in filing a false document is as follows. In August 1992, when defendant was serving as clerk of the Supreme Court and court administrator, a vehicle owned by him was damaged in a parking space outside the Frank J. Licht Judicial Complex by a vehicle and employees of a contractor engaged in renovation and repair of the court building. The defendant informed his secretary that because the vehicle was damaged in front of the courthouse by workers in the courthouse, the cost of repairing the damage should be paid for out of the Supreme Court's special account.

He contacted a long-time friend, Kenneth Rocha, an operator of an automobile-repair business, to repair the vehicle. Rocha testified that since at that time he was under indictment, it would be inappropriate for him to submit bills to the court for repairs to a vehicle owned by the court administrator. Rocha told defendant that he would do the repairs but that he would provide an estimate bearing the name of another vendor, Richard Autiello.

Because the paperwork submitted bore the name of Autiello, the special account payment check was directed to Autiello, not to Rocha. Autiello's business deposited the check from the Supreme Court. After consulting with Rocha, Autiello forwarded his own company's check to Rocha in the same amount as the Supreme Court's check to cover the work that Rocha had performed. The defendant's secretary testified that she wrote checks out of the so-called special account at the direction of defendant and the former chief justice.

The secretary to the former chief justice testified that orders for payment out of the special account were generated by defendant as court administrator and forwarded to her for the chief justice's signature. The former chief justice testified that he recalled a discussion with defendant in which he expressed a belief that the damage should be paid for by Dimeo Construction, whose equipment had specifically caused the damage to defendant's car. He further indicated that he would not have authorized payment to a vendor if he had been made aware that the vendor did not actually perform the work. On the basis of this evidence, the jury found defendant guilty of one count of filing a false document and one count of conspiracy in filing the document.

The defendant contends that the trial justice erred in denying his motions for judgment of acquittal on count 3 of the indictment that charged him with filing a false document in violation of G.L.1956 (1981 Reenactment) § 11–18–1 and count 7 of the indictment that charged him with conspiracy in filing a false document in violation of §§ 11–1–6 and 11–18–1. When considering a motion for judgment of acquittal, "a trial justice must determine whether the evidence offered by the state is capable of generating proof of guilt beyond a reasonable doubt." *State v. Caruolo,* 524 A.2d 575, 580–81 (R.I. 1987). When making that determination, this court, like the trial justice, "must view the evidence in the light most favorable to the state, without weighing the evidence or

assessing the credibility of the witnesses, and must draw therefrom all reasonable inferences consistent with guilt." *Id.* at 581. For the following reasons we conclude that the trial justice was correct in denying defendant's motions for judgment of acquittal.

■ We shall first consider defendant's contention that the trial justice erred in denying his motion for judgment of acquittal on count 3 of the indictment that charged him with the misdemeanor of filing a false document. Section 11–18–1 provides in full:

"No person shall knowingly give to any agent, employee, or servant in public or private employ, or public official any receipt, account, or other document in respect of which the principal, master, or employer, or state, city, or town of which he [or she] is an official is interested, which contains any statement which is *false or erroneous, or defective in any important particular, and which, to his [or her] knowledge, is intended to mislead* the principal, master, employer, or state, city, or town of which he [or she] is an official. Any person who violates any of the provisions of this section shall be deemed guilty of a misdemeanor, and shall, on conviction thereof, be imprisoned, with or without hard labor, for a term not exceeding one year, or be fined not exceeding one thousand dollars ($1,000)." (Emphasis added.)

■ The defendant argues that the trial justice should have granted his motion for judgment of acquittal because the state failed to prove that the document in question was false, erroneous, *and* defective in an important particular. This argument is without merit.

The testimony at trial was sufficient to show that defendant caused a document to be prepared that was false or erroneous with an intent to mislead. The defendant contends that if the state is required only to prove that a document is false or erroneous and *not* defective in an important particular, an individual could be prosecuted under § 11–18–1 merely for providing the state with a document that was incorrect in an innocuous manner, such as an incorrect date. The defendant ignores the fact that § 11–18–1 also provides that the state must show that the document filed "is intended to mislead." The state clearly introduced sufficient evidence to support defendant's conviction. Therefore, the trial justice correctly denied defendant's motion for judgment of acquittal on count 3 of the indictment.

■ The defendant next contends that the trial justice erred in denying his motion for judgment of acquittal in regard to count 7 of the indictment that charged defendant with conspiracy in violation of §§ 11–1–6 and 11–18–1. He asserts that there was no evidence of any agreement among defendant, Rocha, and Autiello to support a conviction for conspiracy. Conspiracy is defined as "a combination of two or more persons to commit an unlawful act or to perform a lawful act for an unlawful purpose." *State v. Mastracchio,* 612 A.2d 698, 706 (R.I.1992). Because the complete and detailed particulars of a conspiracy are not always capable of proof, "the goals of the conspirators 'may be inferentially established by proof of the relations, conduct, circumstances, and actions of the parties.'" *Id.* (quoting *State v. Gordon,* 508 A.2d 1339, 1349 (R.I.1986)).

■ Although there is no direct evidence of the three men's conspiring to create the false paper trail, the reasonable inferences from the evidence support such a finding. It is well established that circumstantial evidence alone may be sufficient to prove guilt beyond a reasonable doubt. *State v. Harnois,* 638 A.2d 532, 536 (R.I.1994). Therefore, the trial justice was correct in denying defendant's motion for judgment of acquittal on count 7.

### III

### Defendant's Motion for a New Trial

■ The defendant lastly contends that the trial justice erred in denying his motion for a new trial. He asserts that in the interest of justice and fairness, insufficient evidence existed to warrant a finding by the jury that defendant violated § 11–18–1 and/or § 11–1–6.

■■■ When considering a motion for a new trial in a criminal case, a trial justice must review the evidence to determine whether it was sufficient to support a jury's verdict of guilty beyond a reasonable doubt. *Caruolo*, 524 A.2d at 585. To make this determination the trial justice must assume the role of "super juror" and exercise independent judgment concerning the credibility of the witnesses and the weight of the evidence. *State v. Henshaw*, 557 A.2d 1204, 1208 (R.I.1989). If the trial justice determines that the evidence produced at trial was sufficient to support the jury's verdict, or if reasonable minds could differ, the motion must be denied. *Id.*

The trial justice carefully reviewed the evidence in this case. She reasoned that the jury found not only that the document was false but that it was false in an important particular. Although she viewed this as the "weak part" of the state's case, she found that reasonable minds could differ on this point. She stated that the jury could have found as fact that the defendant was involved in a scheme that authorized payment to a vendor, knowing that the payment was going to another vendor who was under indictment for auto theft, and that the vendor was actually performing the work and receiving the money. She also found that "the evidence viewed in its totality clearly demonstrates an agreement between Mr. Rocha and Mr. Smith for a scheme in which Mr. Rocha would repair the automobile, but his identity would not be disclosed." Therefore, we conclude that the trial justice properly denied the defendant's motion for a new trial.

For the reasons stated, the defendant's appeal is denied and dismissed, the judgments of conviction on counts 3 and 7 of the indictment are affirmed. The state's appeal of the trial justice's pretrial dismissal of count 2 of the indictment is denied and dismissed, and the papers of the case are remanded to the Superior Court.

BOURCIER, J. did not participate.