## STATE

v.

## William D. HARRINGTON.

No. 96–323–C.A.

Supreme Court of Rhode Island.

Jan. 24, 1997.

Andrew Berg, Special Assistant Attorney General, Aaron Weisman, Assistant Attorney General, for Plaintiff.

Barbara Hurst, Paula Rosin, Assistant Public Defenders, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

PER CURIAM.

This case came before the court for oral argument December 5, 1996, pursuant to an order that had directed both parties to appear in order to show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown. Consequently the issues raised by this appeal shall be decided at this time.

The defendant, William D. Harrington, appeals from a judgment of conviction entered in the Superior Court on one count of leaving the scene of an accident with death resulting in violation of G.L.1956 § 31–26–1, and one count of driving so as to endanger with death resulting in violation of G.L.1956 § 31–27–1. The defendant was sentenced on count 1 to five years' imprisonment and on count 2 to ten years' imprisonment, the sentences to be served concurrently. The court also ordered the suspension of defendant's license for a

period of twenty years. We deny defendant's appeal and affirm the judgment of conviction. The facts of the case insofar as pertinent to this appeal are as follows.

On July 6, 1992, at about 8:45 p.m. (still within the hours of daylight) Timothy Rhow and Troy Sweet were jogging on a four-lane road in West Greenwich commonly referred to as Route 3. The two men were jogging in the same direction as the traffic flow about three feet inside a nine-foot-wide breakdown lane that was located to the right of the two travel lanes. Suddenly Timothy Rhow (the victim) was struck by an automobile driven by defendant. The victim was thrown into the air, and his body ultimately came to rest about 192 feet from the point of impact.

The defendant was accompanied in his automobile by a passenger, Gilbert Sprague. Both men had been in attendance at a party at a place known as Hart's Pig Farm. At this party Sprague testified, defendant appeared to have been drinking for a period of approximately two hours. They then left the party and went to defendant's home where they remained for approximately twenty minutes. They then proceeded to a liquor store and from there were on their way back to the party. Sprague estimated defendant's speed at from fifty to sixty miles per hour (in a forty-five-mile-per-hour zone) at the time of the incident. The two joggers were visible to Sprague from a distance of one-half to one-eighth of a mile from the point of impact. Nevertheless, defendant swerved into the breakdown lane and struck the victim with such force that his body was propelled a great distance and a portion of the automobile's body molding was embedded deep within the victim's body.

Upon striking the victim, defendant did not slow down, but proceeded onto a side road, where he stopped, looked back, and then drove to a nearby gravel pit where he set his automobile on fire. Later Sprague informed the West Greenwich police about the accident, and members of that department found the automobile partially burned and ultimately arrested defendant, who had never made any effort to notify the police of the incident. The victim died of multiple blunt traumatic injuries.

In support of his appeal, defendant raises no issues in respect to the first count of the information on which he was convicted of leaving the scene of an accident, death resulting. The four issues he raises relate solely to count 2, driving to endanger, death resulting. These issues will be considered in the order in which they are raised in defendant's brief. Further facts will be supplied as may be necessary to deal with these issues.

## I

### Testimony of the Medical Examiner

█ Richard J. Evans, M.D., who was the Rhode Island Chief Medical Examiner at the time of the accident and who was stipulated as an expert in pathology, was allowed over defendant's objection to testify relating to the unlikelihood of defendant's having applied the brakes of the automobile. He testified that when the brakes of an automobile are applied, there is a tendency for the front of the car to pitch down, thus causing broken ankles or lower legs. He further testified that when an automobile's brakes are not applied, the injuries tend to be higher up on the body. He qualified his testimony by stating that many factors would affect the conclusion of whether the brakes were applied, and he was merely testifying that this one factor indicating the application of brakes was not present.

The defendant argues that the doctor was not an expert in accident reconstruction. This is undoubtedly true. However, he was an expert in forensic pathology and had considerable experience in evaluating personal injuries resulting from trauma. In our opinion the trial justice committed no abuse of discretion in allowing this testimony. It should be noted that the testimony was merely cumulative in any event, since Sprague, the passenger in defendant's automobile, also testified that defendant did not apply his brakes preceding or following the collision. Thus this testimony was scarcely prejudicial to defendant.

## II

### Motion for New Trial

█ The trial justice denied defendant's motion for a new trial, finding that there was

"compelling evidence of recklessness in this case." She found the speed, the evidence of intoxication, and crossing into the breakdown lane to constitute evidence of recklessness beyond ordinary negligence. Sprague's testimony concerning the drinking at the party was corroborated by the testimony of several officers, who testified that defendant showed symptoms of intoxication at the time of his arrest approximately two hours after the collision. The trial justice summarized her decision with the following comment.

> "The evidence of speed is not only the estimate given by Mr. Sprague, but tremendous force, common sense tells us, would have obviously been exerted against the victim in order for the body molding to become literally inserted into his body and to throw his body almost two hundred feet away, just hurdling [*sic*] it through the air and causing the victim to fracture his skull and die."

Our review of a trial justice's decision on a motion for new trial is highly deferential. We do not disturb the decision of the trial justice unless he or she has "overlooked or misconceived material evidence or was otherwise clearly wrong." *State v. Dame,* 560 A.2d 330, 332–33 (R.I.1989). In the case at bar the trial justice clearly agreed with the verdict of the jury. She reviewed the facts of the case carefully and did not overlook or misconceive material and relevant evidence. Nor was she clearly wrong. The testimony and other evidence in the case amply supported her denial of the motion.

### III

#### Motion for Judgment of Acquittal

■ The analysis of the trial justice's decision on a motion for new trial is a fortiori applicable to defendant's motion for judgment of acquittal. In such a motion the trial justice "must view the evidence in the light most favorable to the state * * * and must draw therefrom all reasonable inferences consistent with guilt." *State v. Smith,* 662 A.2d 1171, 1176–77 (R.I.1995) (quoting *State v. Caruolo,* 524 A.2d 575, 581 (R.I.1987)). If upon applying this analysis, the trial justice finds that the evidence viewed in such a light,

without considering the credibility of witnesses and without weighing the testimony, is capable of generating proof beyond a reasonable doubt, the motion should be denied. *Smith,* 662 A.2d at 1176–77. In the instant case the evidence so viewed was more than ample to justify the denial of the motion for judgment of acquittal.

### IV

#### Jury Instruction

■ The defendant argues that the trial justice committed error in her jury instructions by declining to charge the jury that joggers are required to run in a direction opposite from the flow of traffic on the highway. The defendant further argues that the trial justice should have instructed the jury that the violation of this rule could constitute an intervening independent cause. Our case law supports the decision of the trial justice not to comply with defendant's request. We have held that "[n]egligence on the part of the decedent * * * is not a defense to culpability in cases [of driving so as to endanger death resulting], unless such negligence can be shown to be the sole proximate cause of the death." *State v. Dionne,* 442 A.2d 876, 887 (R.I.1982). We have also held that in the trial of a case alleging the offense of driving so as to endanger with death resulting, the negligence of the victim is irrelevant unless it can be found that the conduct of the victim is an independent, intervening, and efficient cause of his or her own death which constitutes the sole proximate cause of the fatality. This requires a finding that the illegal conduct of the defendant was not a contributing cause to the fatality. *State v. Watkins,* 448 A.2d 1260, 1264–65 (R.I.1982).

In the case at bar the evidence clearly shows that the conduct of the defendant in swerving into the breakdown lane and striking the victim, who was clearly visible from one-half to one-eighth mile from the point of impact, was the proximate cause of the fatality. The presence of the victim in the breakdown lane where he had arisen from tying his shoelace was not an intervening, independent cause of the injury and certainly could not be found to be the sole cause of the

fatality. The trial justice was correct in refusing to give the offered instruction.

For the reasons stated, the appeal of the defendant is denied and dismissed. The judgment of conviction entered in the Superior Court is affirmed.