June 16, 2022

| | | |
|---|---|---|
| State | : | No. 2020-200-C.A. |
| | | (N2/18-350D) |
| v. | : | |
| Adam Jilling. | : | |
| | | |
| State | : | No. 2020-201-C.A. |
| | | (N2/18-350C) |
| v. | : | |
| Gary Gagne. | : | |
| | | |
| State | : | No. 2020-205-C.A. |
| | | (N2/18-350B) |
| v. | : | |
| Daniel Anton. | : | |
| | | |
| State | : | No. 2020-208-C.A. |
| | | (N2/18-350A) |
| v. | : | |
| George Quintal. | : | |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | | |
|---|---|---|
| State | : | No. 2020-200-C.A. (N2/18-350D) |
| v. | : | |
| Adam Jilling. | : | |
| | | |
| State | : | No. 2020-201-C.A. (N2/18-350C) |
| v. | : | |
| Gary Gagne. | : | |
| | | |
| State | : | No. 2020-205-C.A. (N2/18-350B) |
| v. | : | |
| Daniel Anton. | : | |
| | | |
| State | : | No. 2020-208-C.A. (N2/18-350A) |
| v. | : | |
| George Quintal. | : | |

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

# O P I N I O N

**Justice Goldberg, for the Court.**  These cases came before the Supreme Court on May 12, 2022, pursuant to orders directing the parties to appear and show

- 1 -

cause why the issues before us should not be summarily decided.[1]  The State of Rhode Island appeals from the orders and decisions of the Superior Court granting motions to dismiss pursuant to Rule 9.1 of the Superior Court Rules of Criminal Procedure brought by the defendants, Adam Jilling, Gary Gagne, Daniel Anton, and George Quintal (collectively defendants).  The Superior Court dismissed several counts of the criminal information against them alleging accessing a computer system for fraudulent purposes, in violation of G.L. 1956 § 11-52-2, and conspiracy.  On appeal, the state argues that the trial justice erred when he conducted what the state contends was an erroneous statutory analysis and overlooked material facts in the criminal information that established probable cause to believe that the defendants committed these crimes.  We affirm the decisions in all respects.

**Facts and Travel**

The following facts derive from the criminal information and the attached supporting documents.  In May 2018, the Rhode Island State Police began investigating a complaint that employees at Flint Audio and Video (Flint), an electronics and repair store and certified Apple retailer in Middletown, Rhode

---

[1] Although these cases were appealed separately, these are related matters with substantially similar issues.  The defendants were charged in the Superior Court as codefendants in a single criminal information, and their cases were heard and decided together.  Similarly, oral arguments were heard simultaneously.  In the interest of judicial economy and simplification, these cases are consolidated for this opinion.

Island, were improperly accessing the electronic devices of female customers in order to obtain private photographs and videos. All defendants were current or former Flint employees: Gagne was the owner; Quintal was the sales associate manager; Anton was a sales associate[2]; and Jilling was a former sales associate and manager.

The complaint was reported by a female Flint employee who observed nude images of Flint customers in an e-mail from Quintal to Gagne and Anton. The employee also recounted similar incidents when Quintal would deliberately target attractive female customers and intercept them as they entered the store, in order to personally handle their electronic devices and then search the equipment for nude photographs. Another witness, a former Flint employee, reported having observed Quintal accessing the customers' devices and disseminating nude pictures and videos to the other defendants. This information ultimately led to the discovery of thirteen of Flint's female customers whose electronic devices were improperly accessed by Quintal, and whose nude images and videos were distributed to other Flint employees.

Arrest and search warrants were obtained, and Quintal was charged with access to a computer for fraudulent purposes and computer trespass, in violation of

_____

[2] In a police narrative included in the criminal information package, Anton was represented to be the co-owner of Flint; he has disputed this with extrinsic evidence presented to the Superior Court. Notwithstanding, this issue has no bearing on our resolution of these cases.

§ 11-52-2 and § 11-52-4.1, respectively. Several items were seized, including electronic and storage devices containing numerous media files of images and videos that were suspected to be of Flint customers, and electronic communications between Quintal and other Flint employees depicting the dissemination of those files were uncovered. The discovery of these communications resulted in the arrests of five other Flint employees, including defendants Gagne, Anton, and Jilling, who were parties to these communications.[3]

The criminal information contained ten counts against defendants: five counts charged violations of § 11-52-2, and the remaining counts alleged conspiracy. Count one was voluntarily dismissed, based on the statute of limitations. The individual defendants were charged in the information as follows: Jilling was charged with one count of conspiracy; Gagne and Anton were each charged with one count of computer fraud under § 11-52-2 and a conspiracy count; and Quintal was charged with all counts in the criminal information. Motions to dismiss for lack of probable cause, in accordance with Rule 9.1, subsequently were

---

[3] The criminal information package revealed that Gagne and Jilling actively engaged in these conversations and requested nude images of customers from Quintal, but that Anton was only a recipient to these communications and did not actively engage in these conversations or request photographs.

filed by defendants.[4]  The trial justice granted the motions based on his interpretation of § 11-52-2 and lack of probable cause, concluding that defendants' conduct did not fall within the ambit of the statute and, therefore, defendants similarly could not be charged with conspiracy to violate § 11-52-2.  The orders dismissing the criminal charges entered on June 26, 2020.  The state filed timely appeals.

## Standard of Review

"This Court reviews questions of statutory construction *de novo*." *State v. Peters*, 172 A.3d 156, 159 (R.I. 2017).  Typically, "[i]n accordance with our well-settled practice of statutory construction, we first determine whether these statutory definitions, by their plain language, are clear and unambiguous." *Id.* at 160.  Nevertheless, "this [C]ourt has the responsibility of effectuating the intent of the Legislature by examining a statute in its entirety[.]" *State v. Smith*, 662 A.2d 1171, 1175 (R.I. 1995) (quoting *In re Falstaff Brewing Corporation Re: Narragansett Brewery Fire*, 637 A.2d 1047, 1049 (R.I. 1994)); *see State v. Hazard*, 68 A.3d 479, 485 (R.I. 2013) ("However, * * * even when confronted with a clear and unambiguous statutory provision, 'it is entirely proper for us to look to the sense and meaning fairly deducible from the context.'") (quoting *In re Brown*, 903 A.2d

---

[4] The lack of clarity in the criminal information also triggered defendants' motions for a bill of particulars and motions to compel more responsive answers to the bill of particulars, which answers, defendants contend, are not sufficient.

- 5 -

147, 150 (R.I. 2006)). "Additionally, we remain mindful that 'ambiguities in penal statutes must be strictly construed in favor of the party upon whom a penalty is to be imposed.'" *Hazard*, 68 A.3d at 485 (brackets omitted) (quoting *State v. Clark*, 974 A.2d 558, 571 (R.I. 2009)); *see Smith*, 662 A.2d at 1175 ("[U]nder the rules of statutory construction, a penal statute is subject to strict and narrow construction."). "[T]his Court will not construe a statute to reach an absurd result." *Long v. Dell, Inc.*, 984 A.2d 1074, 1081 (R.I. 2009) (brackets omitted) (quoting *Shepard v. Harleysville Worcester Insurance Co., Inc.*, 944 A.2d 167, 170 (R.I. 2008)).

"When reviewing a decision on a motion to dismiss, this Court accords great weight to a trial justice's probable-cause findings; we will not set them aside 'unless they are clearly erroneous or fail to do justice between the parties.'" *State v. Reed*, 764 A.2d 144, 146 (R.I. 2001) (quoting *State v. Aponte*, 649 A.2d 219, 222 (R.I. 1994)). "In determining a motion to dismiss an information for lack of probable cause, 'the trial justice must examine the information and the attached exhibits to determine whether there is probable cause to believe that the offense charged was committed and that the accused had committed it.'" *Peters*, 172 A.3d at 158 (brackets omitted) (quoting *Reed*, 764 A.2d at 146). It is well settled that "[a] trial justice['s] review of whether probable cause exists is limited to 'the four corners of the information package.'" *Id.* (quoting *State v. Young*, 941 A.2d 124,

- 6 -

128 (R.I. 2008)). "In performing this function, the trial justice should grant the state 'the benefit of every reasonable inference' in favor of a finding of probable cause." *Young*, 941 A.2d at 128 (quoting *State v. Jenison*, 442 A.2d 866, 876 (R.I. 1982)).

## Analysis

### Statutory Construction

The state claims that the trial justice misinterpreted § 11-52-2 and conducted an erroneous analysis.[5] The state specifically contends that the trial justice erred in beginning his statutory analysis "by exploring the legislative intent behind the statutory scheme[,]" rather than "by examining the plain language of the statute," and by failing to "mak[e] an express finding that the language of § 11-52-2 was ambiguous." Even though the trial justice began with a discussion of the legislative history of chapter 52 of title 11, we cannot fault him for addressing the legislative background of a developing area of the law since the advent of computers, personal electronic devices, and other technological innovations. Although our preference generally has been to look to the statute's plain language, our primary focus in statutory interpretation is to remain faithful to the intent of the Legislature, a task that sometimes calls for an initial review of the legislative

---

[5] The state directs this Court to federal statutes with similar language as instructive to our interpretation of G.L. 1956 § 11-52-2. We decline to consider federal law when our own jurisprudence contains sufficient guidance for our analysis.

history. *See, e.g.*, *State v. Jordan*, 528 A.2d 731, 732 (R.I. 1987) (beginning its statutory-interpretation analysis with an examination of the development and legislative history of the sexual-assault statutory scheme); *State v. Lussier*, 511 A.2d 958, 959-60 (R.I. 1986) (same, relating to the development of the driving-under-the-influence statutory scheme).

This Court has not had the occasion to interpret § 11-52-2, which provides, in relevant part, as charged in the criminal information:

> "Whoever directly or indirectly accesses or causes to be accessed any * * * computer system * * * for the purpose of * * * obtaining * * * property * * * by means of false or fraudulent pretenses, representations, or promises * * * shall be guilty of a felony and shall be subject to the penalties set forth in § 11-52-5."

Although our jurisprudence surrounding § 11-52-2 is limited, it is noteworthy that prior cases pertaining to financial fraud have arisen. *See Retirement Board of Employees' Retirement System v. Randall*, 249 A.3d 629, 631 (R.I. 2021) ("[The] defendant was charged by way of criminal information with felony embezzlement, * * * and access to a computer for fraudulent purposes, in violation of G.L. 1956 §§ 11-52-2 and 11-52-5."); *see also State v. Tatro*, 659 A.2d 106, 109 (R.I. 1995) (involving a "wide-ranging credit card fraud scheme" and "twenty-five counts of computer crime under G.L. 1956 (1981 Reenactment) § 11-52-2").

The central issue in the cases before us is whether the property—that is, the nude photographs and videos of Flint customers—was obtained "by means of false

or fraudulent pretenses, representations, or promises[.]" Section 11-52-2. Because this is the sole element upon which the trial justice based his decisions, we limit our review to this element of § 11-52-2. Our resolution of this issue applies equally to all defendants and also settles the remaining counts in the criminal information.

Section 11-52-2 prohibits access to a computer system for the purpose of obtaining property "by means of false or fraudulent pretenses, representations, or promises[.]" Section 11-52-2. Although chapter 52 of title 11 is devoid of any definition of the term "false or fraudulent pretenses," the offense of obtaining property by false pretenses is a form of larceny.

The crime of obtaining property by false pretenses is set forth in G.L. 1956 § 11-41-4, which provides that "[e]very person who shall obtain from another designedly, by any false pretense or pretenses, any * * * property, with intent to cheat or defraud, * * * shall be deemed guilty of larceny." Under § 11-41-4, "a false pretense may be a misrepresentation of a past or existing fact [or a] promise to perform a future act[.]"[6] *State v. Letts*, 986 A.2d 1006, 1011 (R.I. 2010). "[T]he crime is complete when the defendant intentionally uses false pretenses to *induce* another to alter or terminate any of that person's rights or powers concerning the

---

[6] This definition clearly encompasses the whole phrase "false or fraudulent pretenses, representations, or promises" found in § 11-52-2.

* * * property with the intent to cheat or defraud that person." *State v. Fiorenzano*, 690 A.2d 857, 859 (R.I. 1997) (emphasis added).[7]

The precise thrust of the state's interpretation of § 11-52-2 in the context of this criminal information is difficult to discern.  What is clear, however, is that the state insists that the criminal conduct was the *access* to a computer, rather than its *use*.  We are of the opinion that § 11-52-2 prohibits direct or indirect access to a computer in order to obtain the property of another by means of false or fraudulent pretenses.  The gravamen of the statute is the purpose for which the computer is being used: to commit a larcenous act—rather than the unlawful access itself.  The larceny occurs after the accused has accessed the computer as the means to perpetrate the crime of obtaining property by false or fraudulent pretenses.  Where false or fraudulent pretenses are employed to access the computer in the first

---

[7] Different from § 11-52-2, G.L. 1956 § 11-41-4 requires an "intent to cheat or defraud"; nevertheless, the definition of "obtaining * * * property * * * by means of false * * * pretenses" in § 11-52-2 remains the same as that in § 11-41-4 because of the terms "for the purpose of" and "fraudulent pretenses" in § 11-52-2, which is the equivalent of the intent-to-defraud requirement found in § 11-41-4. *See* Black's Law Dictionary 746 (11th ed. 2019) (defining "false pretenses" as "[t]he crime of knowingly obtaining title to another's personal property by misrepresenting a fact with the intent to defraud. * * * Also termed *obtaining property by false pretenses*; *fraudulent pretenses*; *larceny by false pretenses*"); *see also* Catherine Palo, J.D., L.L.M., 70 Am. Jur. Trials 435 § 18 (originally published in 1999) ("The use of the word 'purpose' in computer crime laws requires proof that the person charged under those laws had a specific intent to commit a certain type of crime.").

instance, § 11-52-2 does not create a felony; the false or fraudulent pretenses must be intended as the means employed to obtain the property.

"[I]t is well settled that a legislature is presumed to know of prior legislation on the same subject matter." *State v. Lewis*, 91 R.I. 110, 116, 161 A.2d 209, 213 (1960). "[I]n construing the provisions of statutes that relate to the same or to similar subject matter, the court should attempt to harmonize each statute with the other so as to be consistent with their general objective scope." *Billington v. Fairmount Foundry*, 724 A.2d 1012, 1013-14 (R.I. 1999) (quoting *Kaya v. Partington*, 681 A.2d 256, 261 (R.I. 1996)). "This [C]ourt must assume that the Legislature intended that statutes relating to the same subject matter be construed together to be consistent and to effectuate the policy of the law." *Jordan*, 528 A.2d at 734.

Whether or not there was a finding that § 11-52-2 is ambiguous, an examination of the legislative history of the statutory scheme surrounding computer fraud is significant in our interpretation of § 11-52-2. Section 11-52-2 was first enacted in 1979 to outlaw direct or indirect access to a computer or computer system for fraudulent purposes. *See* P.L. 1979, ch. 217, § 1. In that same session, the Legislature enacted § 11-52-3, which prohibits the intentional and unauthorized access, alteration, damage, or destruction of a computer, also as a felony offense. *See id.* Subsequently, in 1983 the General Assembly added

- 11 -

§ 11-52-4, prohibiting computer theft, including the theft of "data contained in a computer[.]"[8] *See* P.L. 1983, ch. 246, § 2. In 1999 the Legislature adopted § 11-52-4.1, which prohibits computer trespass.[9] *See* P.L. 1999, ch. 421, § 2.

---

[8] Section 11-52-4 states,

> "Whoever, intentionally and without claim of right, takes, transfers, conceals or retains possession of any computer, computer system, computer network, computer software, computer program, or data contained in a computer, computer system, computer program, or computer network with a value in excess of five hundred dollars ($500) shall be guilty of a felony and shall be subject to the penalties set forth in § 11-52-5. If the value is five hundred dollars ($500) or less, then the person shall be guilty of a misdemeanor and may be punishable by imprisonment for a term not exceeding one year or by a fine of not more than one thousand dollars ($1,000), or both."

[9] Section 11-52-4.1 states, in pertinent part,

> "(a) It shall be unlawful for any person to use a computer or computer network without authority and with the intent to:
>
> "* * *
>
> "(6) Make or cause to be made an unauthorized copy, in any form, including, but not limited to, any printed or electronic form of computer data, computer programs, or computer software residing in, communicated by, or produced by a computer or computer network[.]
>
> "* * *

These later provisions have relevance to the cases at bar. Lastly, although not found in chapter 52 of title 11, we note that in 2018 the General Assembly enacted G.L. 1956 § 11-64-3, proscribing unauthorized dissemination, by any means, of indecent material, which is characterized in that section as a "sexually explicit visual image of another person[.]" *See* P.L. 2018, ch. 27, § 2; P.L. 2018, ch. 28, § 2.

The later addition of these provisions to chapter 52 of title 11 demonstrates the General Assembly's intent to reach conduct that is different from that targeted in § 11-52-2. Additionally, the fact that the Legislature enacted § 11-64-3 in 2018 to prohibit unauthorized dissemination of indecent material establishes that the General Assembly saw a need to target and proscribe that type of behavior. Because the Legislature is presumed to know the state of existing law, these subsequent enactments address conduct different from that set forth in § 11-52-2.

An illustrative example is *Jordan*, where this Court was faced with a similar issue of statutory interpretation. *See Jordan*, 528 A.2d at 732. In that case, the defendant was convicted of first-degree child molestation sexual assault under G.L.

---

"(b) * * * Whoever violates this section shall be guilty of a felony and shall be subject to the penalties set forth in § 11-52-2. If the value is five hundred dollars ($500) or less, then the person shall be guilty of a misdemeanor and may be punishable by imprisonment for a term not exceeding one year or by a fine of not more than one thousand dollars ($1,000) or both." Section 11-52-4.1(a)(6), (b).

- 13 -

1956 § 11-37-8.1, a felony offense carrying a maximum sentence of life imprisonment within the sexual-assault statutory scheme.[10] *See id.* at 731, 733. On appeal, we held that § 11-37-8.1 was inapplicable to the defendant because the victim—who was thirteen years and ten months old—was not "thirteen (13) years of age or under" as specified in the statute. *See id.* at 734, 735; *see also* § 11-37-8.1, as enacted by P.L. 1984, ch. 59, § 2. In so holding, we examined the legislative history of the sexual-assault statutory scheme and concluded that "§ 11-37-8.1 applie[d] to those persons under thirteen years of age and to those who are exactly thirteen years of age[,] * * * [and] [u]pon and after the thirteenth anniversary of a person's birth, he or she is 'over thirteen' within the meaning of § 11-37-6."[11] *Id.* at 734. This Court reasoned that:

> "If we were to accept the state's position that the Legislature intended in its 1981 amendment of the first-

---

[10] In 1987 the first-degree child molestation sexual assault statute, G.L. 1956 § 11-37-8.1, titled "Definition of guilt of first degree child molestation sexual assault," provided, "[a] person is guilty of first degree child molestation sexual assault if he or she engages in sexual penetration with a person thirteen (13) years of age or under." *See* P.L. 1984, ch. 59, § 2; *see also* § 11-37-8.2, as enacted by P.L. 1984, ch. 59, § 2 (penalty for first-degree child molestation sexual assault of twenty years' imprisonment to life imprisonment).

[11] Also, in 1987, § 11-37-6, titled "Definition of guilt of third degree sexual assault," provided, "[a] person is guilty of third degree sexual assault if he or she is over the age of eighteen (18) years and engaged in sexual penetration with another person over the age of thirteen (13) years and under the age of consent, sixteen (16) years of age." *See* P.L. 1979, ch. 302, § 2; *see also* § 11-37-7, as enacted by P.L. 1979, ch. 302, § 2 (penalty for third-degree sexual assault of not more than five years).

degree sexual-assault statute to include within its provisions not only persons who are exactly thirteen years of age but also those persons who have passed the date on which they attained the age of thirteen, but are not yet fourteen, then we must also determine that the third-degree sexual-assault statute applies only to those persons who are fourteen years of age and over but under sixteen. Otherwise, both statutes would proscribe sexual assault upon persons who are older than exactly thirteen years of age but are not yet fourteen, vesting the state's counsel with unfettered discretion to prosecute under either statute, one of which carries a minimum sentence of twenty years' imprisonment and a potential sentence of life imprisonment, the other carrying a maximum penalty of five years' imprisonment." *Jordan*, 528 A.2d at 733.

Viewed in this context, were we to subscribe to the state's argument, the conduct alleged in these cases would be proscribed by more than one statute—that is, the intentional, and without claim of right, transfer of data contained in a computer (§ 11-52-4); or the use of a computer without authority and with the intent to make an unauthorized copy of computer data (§ 11-52-4.1); or the offense actually charged in the cases at bar, accessing a computer for the purpose of obtaining property by means of false or fraudulent pretenses (§ 11-52-2). It does not escape our attention that only the offense set forth in § 11-52-2 is a felony crime in the context of these cases. Clearly, the Attorney General is not vested with such unfettered discretion to prosecute from a menu of statutory enactments. *See Jordan*, 528 A.2d at 733.

**A**

**Access to Computer for Fraudulent Purposes**

The state argues that the trial justice also erred when he overlooked material facts set forth in the criminal information that provided sufficient evidence to establish probable cause that defendants violated § 11-52-2 and conspired to commit this crime.[12]   On the other hand, Quintal argues that this is a case of "prosecutorial overreach" where a "computer trespass * * * [is] arbitrarily [being] upgraded to a felony"; similarly, Anton argues that the state's case "was based on its attempt to fit a round peg—the conduct at issue—in to [*sic*] a square hole—the language of § 11-52-2."

In his decisions, the trial justice found, after a full review of the criminal information package, that there was no evidence to suggest that defendants falsely represented anything to Flint customers; there were no statements or exhibits alleging that defendants made any false misrepresentations, promises, or statements.  In fact, the trial justice noted, Flint customers were not persuaded to relinquish their devices, but rather, they voluntarily brought them to Flint for

---

[12] During oral argument, the state also argued for the first time that defendants had an obligation to Flint customers pursuant to an implied covenant of good faith and fair dealing, as they were acting under a device-repair contract.  Not only is this argument proscribed by our raise-or-waive rule, but it is also wholly inapplicable in a criminal case.

repair. Lastly, he concluded that defendants' "opportunistic viewing and copying of images did not involve a misrepresentation of any fact to any of the victims."

More specifically, with respect to Quintal—the only defendant who was alleged to have directly accessed the devices—the trial justice found that he was capable of performing the repairs and that "there was no indication that [Quintal] specifically promised to limit his actions or access to a particular area within the device." The trial justice also determined that there was no evidence that the repairs were not completed by Flint employees as promised. As to Gagne, Anton, and Jilling, the trial justice found that the complainants did not communicate or interact with these defendants, nor did these defendants access the devices or direct anyone to access a device for the purpose of obtaining nude photographs.

We are satisfied that there is no evidence that these defendants made any misrepresentations, fraudulent or otherwise, to Flint customers. At best, the only evidence of false pretenses presented by the state was Quintal's alleged request to Flint customers for a password to facilitate his access to their devices. The state, however, equates Quintal's access to a customer's device by unnecessarily requesting their password as accessing the device for the purpose of obtaining property "by means of false or fraudulent pretenses, representations, or promises[.]" Yet, as discussed herein, the phrase "by means of false * * * pretenses" in § 11-52-2 does not relate to the term *access* by means of false

- 17 -

pretenses, but rather to the *obtaining of the property* by means of false pretenses. Here, Quintal accessed the devices, but there is no evidence that false pretenses were employed in obtaining the property once that access was achieved.

We pause to note that the conduct of these defendants can be characterized in several ways. However, the presumption of innocence serves to preclude further comment. Accordingly, in the context of the state's make-it-fit approach to the evidence in this case, we cannot conclude that defendants' actions fell within the purview of § 11-52-2 in order to constitute a felony. *Cf. Smith*, 662 A.2d at 1176 ("It is clear, however, that these actions are not felonies under the criminal-conversion statute as it reads at this time. We understand the frustration of the state in this controversy; however, we shall not engage in judicial legislation to reach a particular result.").

## B

### Conspiracy

"A criminal conspiracy is an 'agreement by two or more persons to commit an unlawful act or to perform a lawful act for an unlawful purpose.'" *State v. Huntley*, 171 A.3d 1003, 1006 (R.I. 2017) (quoting *State v. Abdullah*, 967 A.2d 469, 474-75 (R.I. 2009)). "To convict the accused of the crime of conspiracy, 'the prosecution must prove the existence and scope of the unlawful agreement beyond a reasonable doubt.'" *Id.* (quoting *Abdullah*, 967 A.2d at 475). "A coconspirator is

- 18 -

only vicariously liable for the actions of another coconspirator if those actions were committed in furtherance of an existing conspiracy." *State v. Lassiter*, 836 A.2d 1096, 1106 (R.I. 2003) (emphasis omitted) (citing *Pinkerton v. United States*, 328 U.S. 640, 647 (1946)). In fact, "[w]e, like the federal courts, tend to look with disfavor on attempts to broaden the already pervasive and wide-sweeping nets of conspiracy prosecution." *Id.* (quoting *State v. Porto*, 591 A.2d 791, 796 (R.I. 1991)).

Additionally, "although the crime of conspiracy is itself a separate offense, [conspiracy counts] should also [be] dismissed [when] * * * there [is] no underlying crime on which to base the conspiracy charge[s]." *State v. Maxie*, 187 A.3d 330, 341-42 n.13 (R.I. 2018). In *Maxie*, we dismissed the underlying crime of sex trafficking of a minor due to the absence of language setting forth a criminal offense within the statute. *See id.* at 341. This Court noted that the conspiracy count, which was charged under G.L. 1956 § 11-1-6, similarly should have been dismissed because there was no underlying crime on which to base the conspiracy offense. *See id.* at 341-42 n.13. In support, we cited to § 11-1-6, which penalizes "every person who shall conspire with another to commit *an offense punishable under the laws of this state*[.]" *Id.* at 341-42 n.13 (emphasis added); *see also* § 11-1-6. Section 11-1-6 clearly sets forth the penalty for conspiracy, and does not define, codify, or criminalize the offense of conspiracy, which remains a common

law crime. *See State v. Donato*, 414 A.2d 797, 803 (R.I. 1980) ("The crime of conspiracy [is] still a common-law crime in Rhode Island[.]").  Therefore, a conspiracy count under § 11-1-6 alone is not sufficient to charge conspiracy.

Here, the criminal information alleged that defendants "did agree, combine, confederate, contrive or conspire together, to do an unlawful act(s), to wit, *fraudulently use a computer*, in violation of § 11-1-6 of the General Laws of Rhode Island[.]" (Emphasis added.)  Because the trial justice correctly concluded that defendants' conduct did not fall within § 11-52-2—upon which the conspiracy charges were based—and § 11-1-6 cannot be the sole basis for these counts, we are satisfied the conspiracy counts properly were dismissed.

## Conclusion

For the reasons set forth in this opinion, we affirm the orders of the Superior Court.  The papers in these cases may be returned to the Superior Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Adam Jilling.<br>State v. Gary Gagne.<br>State v. Daniel Anton.<br>State v. George Quintal. |
| **Case Number** | No. 2020-200-C.A.<br>(N2/18-350D)<br><br>No. 2020-201-C.A.<br>(N2/18-350C)<br><br>No. 2020-205-C.A.<br>(N2/18-350B)<br><br>No. 2020-208-C.A.<br>(N2/18-350A) |
| **Date Opinion Filed** | June 16, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice William E. Carnes, Jr. |
| **Attorney(s) on Appeal** | For State:<br>Mariana E. Ormonde<br>Department of Attorney General |
| | For Defendants:<br>Kevin O. Hagan, Esq.<br>Peter A. DiBiase, Esq.<br>Lauren E. Jones, Esq.<br>Christopher S. Gontarz, Esq. |